# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 1:21-CR-85 |
| | : | |
| | : | JUDGE SUSAN J. DLOTT |
| v. | : | |
| | : | |
| | : | **GOVERNMENT'S OMNIBUS** |
| TRES GENCO, | : | **RESPONSE IN OPPOSITION TO** |
| | : | **DEFENDANT'S MOTIONS** |
| Defendant. | : | |
| | : | |
| | : | |

The United States respectfully submits this omnibus response in opposition to the defendant's motions. On August 25, 2021, the defendant filed two motions to suppress, a motion for a bill of particulars, and a motion to dismiss Count Two of the Indictment. *See* Dkts. 25, 26, 27, and 28. For the reasons outlined within, all of the defendant's motions should be denied.

## BACKGROUND

On March 12, 2020, Highland County Sheriff's Office deputies went to a residence in response to a 911 call. Exhibit 1 (Highland County Search Warrant) at 3. Upon arrival, law enforcement spoke with a witness, who said the defendant had become erratic and violent, and had threatened her. *Id*.; Exhibit 3 (Portion of Felony Report) at 2. The witness said she heard him go into his bedroom and cock a gun. Ex. 1 at 3. Using the witness's phone, an officer called the defendant and instructed him to exit the home, which he did. Ex. 3 at 2.

Officers spoke with the defendant, who told them he had a shotgun in his car. Ex. 1 at 3. An officer asked the defendant for permission to search the car, which the defendant granted. *Id*. Officers found a Palmetto State Armory AR-15 rifle equipped with a bump stock, along with several loaded magazines, boxes of ammunition, and body armor, in the trunk of the car. *Id*.

The witness then told the officers that she had previously discovered a letter of the defendant that she believed detailed the defendant's plan to "harm a lot of people." *Id*. at 4. The witness also told officers that the defendant had a handgun in addition to the rifle. *Id*. at 3.

An officer approached the defendant, read him his *Miranda* rights, and asked the defendant about having a handgun. *Id*.; Ex. 3 at 3. The defendant denied having one. Ex. 1 at 3. The officer then asked if the defendant would grant law enforcement permission to search his bedroom for a handgun, which the defendant did. *Id*.; Ex. 3 at 3. The officer told the defendant that if he ever wanted to retract his permission to search, he could do so by informing the officer with him. Ex. 3 at 3.

Four officers then went inside the home and into the defendant's bedroom to look for the gun. Ex. 1 at 4. While searching, one of the officers looked inside a plastic bin with an open top and noticed a loose piece of paper that appeared to detail plans for a mass attack, specifically a "mass shooting on May 23, 2020 . . . including the killing of 3,000 people with an M-16 rifle." Ex. 1 at 4; Ex. 3 at 3. The officer set it aside and continued the search. Ex. 3 at 3. While searching a desk drawer for the gun, an officer saw a hand-drawn "layout of what appeared to be some sort of room or business[.]" Ex. 1 at 4; s*ee* Ex. 3 at 5. After an officer located a modified handgun inside a heating vent, law enforcement notified the defendant, and he withdrew his consent. *Id*. at 3. Officers stopped their search and left the house. *Id*.

Officers then prepared a search warrant for the home based primarily on what they had found and the witness's statements. *See* Ex. 1. After the warrant was signed by a state magistrate, officers conducted a search and seized, among other things, the plans they had seen earlier. Ex. 3 at 3-4.

The Highland County Prosecutor charged the defendant by indictment with Making a Terroristic Threat, in violation of Ohio Revised Code § 2909.23(A), and a Forfeiture Specification, under Ohio Revised Code § 2941.14.17. *State of Ohio* v. *Tres Presley Genco*,

2

Highland County, 20CR065, Indictment (June 2, 2020). The defendant entered an *Alford* plea to the charges and was sentenced to 17 months' imprisonment. *See State of Ohio* v. *Tres Presley Genco*, Highland County, 20CR065, Judgment (Oct. 22, 2020).

On July 20, 2021, a Grand Jury in the Southern District of Ohio indicted the defendant on two counts: Count One, Attempted Hate Crime, in violation of Title 18, United States Code, Section 249(a)(2), and Count Two, Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o). Dkt. 7. The indictment was a speaking indictment, outlining sixteen paragraphs of facts in support of the two counts. *Id.*

## I. The Defendant's Motion to Suppress Evidence Observed During Residential Consensual Search on March 12, 2020 Should Be Denied.

In his first motion to suppress, the defendant argues that the evidence observed by law enforcement during the consensual search of the defendant's bedroom should be suppressed. Dkt. 25. That motion should be denied.

The defendant gave consent to law enforcement to search his bedroom for a gun. He now contends that law enforcement exceeded the scope of his consent by "searching through" his "private papers." Presumably, the defendant is referencing two specific documents – the handwritten page that appeared to detail the defendant's plans for a mass attack and a hand-drawn floor plan, both of which were subsequently referenced in the affidavit for a search warrant for the home. *See* Ex. 1 at 4.

Providing law enforcement with consent to search is an exception to the warrant requirement of the Fourth Amendment. *See Schneckloth* v. *Bustamonte*, 412 U.S. 218, 228 (1973) ("[A] search pursuant to consent . . . properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity."). When law enforcement conducts a search pursuant to consent, "the scope of the consent given determines the permissible scope of the search." *United States* v. *Gant*, 112 F.3d 239, 242 (6th Cir. 1997). The "expressed object"

of the search generally defines the scope, and the standard is "objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991). Consent to search includes closed (but unlocked) containers that might hold the expressed object of the search. *Id*. at 251.

      Here, a detective asked the defendant if he would grant permission to law enforcement to search his bedroom for a handgun. Ex. 1 at 3. The defendant consented. *Id*. Officers then went inside the home and began searching the defendant's bedroom. *Id*. at 4. As they did so, the officers conducting the search maintained contact with an officer who stayed outside with the defendant, in part so that the defendant could revoke consent at any time. Ex. 3 at 3. While looking for guns, a detective searched inside "a plastic tote box with open top." *Id*. In that plastic tote, the detective noticed the handwritten plan on a single sheet of Greek hotel stationery. *Id*. The detective set the document aside and continued the search. *Id*. Inside a desk drawer, law enforcement located 9mm bullets, and saw the hand-drawn floor plan. Ex. 1 at 4; Ex. 3 at 5. Eventually, law enforcement found the handgun and magazine hidden inside a heating vent. Ex. 1 at 4. When the gun was discovered, law enforcement told the defendant about their find, and the defendant revoked his consent. Ex. 3 at 3. Law enforcement stopped the search. *Id*.

      The discovery of the defendant's plans was within the scope of the defendant's consent. Law enforcement saw the mass attack plan and the floor plan incidentally while properly searching containers that could have held a gun. Both the plastic tote and the desk drawer were sized such that a handgun could be contained inside. The plans were not deep within notebooks or file folders that would require an officer to open and read them; they were instead on loose-leaf paper, a single sheet for each. The officers were not wasting their time digging through and reading the defendant's papers; they were looking for a gun. They did not even seize the documents, but instead continued their search until they found the gun the defendant had hidden

in the vent. When the defendant withdrew his consent, law enforcement stopped the search and sought a search warrant.

Because the mass attack plan and the floor plan were seen by law enforcement while they were properly conducting a search within the scope of the defendant's consent, those documents should not be suppressed, and law enforcement was free to rely on those documents in the affidavit of their subsequent search warrant.

But even if the officers somehow went beyond the scope of the defendant's consent to search—and they did not—the plans need not be excluded as evidence in the subsequent warrant. The exclusionary rule is a "last resort" and "applies only where it results in appreciable deterrence." *Herring* v. *United States*, 555 U.S. 135, 141 (2009) (internal quotation marks and brackets omitted). Such a severe consequence comes at great societal cost. *Id*. The police conduct here—which was nothing more than perceiving what was written and drawn on two loose papers stored in places that could hold a gun—is not the sort that justifies application of the exclusionary rule. The officers did not use the defendant's permission to search as a license to read through the defendant's diaries or poke through his files; they saw these documents while searching for exactly what they were authorized to find. These incidental views are not the type of misconduct that requires the extreme remedy of suppression.

## II. The Defendant's Motion to Suppress Evidence Recovered on March 13, 2020 Pursuant to a Search Warrant Should Be Denied.

The defendant's second motion to suppress argues that the evidence recovered pursuant to the state-issued search warrant for his home should be suppressed. Dkt. 26. The defendant raises two challenges to the warranted search of his bedroom. First, he asserts that there was no probable cause provided in the warrant. Second, he claims the warrant failed to list the address to be searched and the results should be suppressed. Both of these claims are without merit.

5

A. <u>The Magistrate Was Correct that The Warrant Detailed Probable Cause.</u>

The defendant argues there was no probable cause in the search warrant based on two grounds. First, he contends that the warrant relied on an inapplicable Ohio state statute, and second, that the warrant relied on evidence improperly obtained during the consent search of the defendant's bedroom.

1. *There was probable cause to believe evidence of terroristic threats would be found in the defendant's home.*

Addressing the first argument, the search warrant properly authorized the seizure of evidence relating to a violation of Section 2909.23 of the Ohio Revised Code, Making a Terroristic Threat. That statute prohibits threatening to commit an offense when the purpose is to "intimidate or coerce a civilian population" and "[a]s a result of the threat, the person causes a reasonable expectation or fear of the imminent commission of the specified offense." Ohio Revised Code § 2909.23(A). The statute also makes clear that "[i]t is not a defense to a charge of a violation of this section that the defendant did not have the intent or capability to commit the threatened specified offense or that the threat was not made to a person who was a subject of the threatened specified offense." *Id*. § 2902.23(B). In other words, someone may violate the statute even if the threat has not been communicated to the targets of the intended violence.

"Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States* v. *Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *District of Columbia* v. *Wesby*, 583 U.S. 577, 587 (2018)). When assessing probable cause, the inquiry is not intended to be an "excessively technical dissection" of facts, but instead a consideration of the circumstances in total. *Id*. at 585-86. The magistrate's conclusion that there was probable cause to issue a search warrant is entitled to great deference on review and should be upheld if a "substantial basis" for probable cause exists. *Id*. at 586.

The defendant argues there was no evidence cited in the warrant to support the Magistrate's determination that evidence of a violation of the state statute probably would be found in the defendant's bedroom. This ignores the references to the defendant's handwritten plan to kill "3,000 people with an M-16 rifle" and his "secondary plans to carry out an 'ambush' in a populated area." Ex. 1 at 4. The warrant also described how the handwritten plan included the "chemical makeup of Mustard Gas." *Id*. It was not unreasonable for the Magistrate to conclude that evidence of a threat to a civilian population may be recovered from the room where law enforcement saw the document.

Here, the defendant attempts to remove his written plans from the context in which they were found, labeling them "private writings." Those writings—which included what appeared to be a written plan for a mass attack and a hand-drawn floor plan—were discovered at the same time that law enforcement discovered, among other things, an assault rifle modified to be an automatic weapon with ammunition and body armor in the trunk of the defendant's car, a modified handgun hidden in the air vent of the defendant's room, and had heard from a witness with direct knowledge that the defendant had written a letter detailing a plan to hurt a lot of people. Taken together, there was a substantial basis for the magistrate to conclude there could be evidence of Making Terroristic Threats in the defendant's room.

The defendant makes brief reference to his First Amendment rights to express his personal thoughts within his home, essentially arguing that the plans were protected speech. This nod towards the protections of the First Amendment is mere rehash of his unsuccessful motion to dismiss the indictment in the state case. *See State of Ohio* v. *Tres Presley Genco*, Highland County, 20CR065, Motion to Dismiss (August 19, 2020). After he was indicted in the state for Marking Terroristic Threats, the defendant moved to dismiss, arguing that his writings could not constitute a threat since they were private documents subject to First Amendment protection. *Id*. The state court found that the writings were not protected speech and permitted

7

the indictment to go forward. *State of Ohio* v. *Tres Presley Genco*, Highland County, 20CR065, Decision Overruling Motion to Dismiss (August 31, 2020).

After losing his motion to dismiss, the defendant entered an *Alford* plea and was convicted of violating Ohio Revised Code 2902.23, the very statute referenced in the search warrant. *State of Ohio* v. *Tres Presley Genco*, Highland County, 20CR065, Plea of Guilty (September 17, 2020). That conviction was based on the evidence detailed in, and recovered pursuant to, the search warrant the defendant challenges here. His position that the warrant improperly relied on the very statute that he was later convicted under has no merit.

> 2. *The warrant detailed probable cause, with or without the defendant's written plans.*

Addressing the second argument, for the reasons outlined *supra*, the discovery of the documents during the consent search was within the proper scope of the search and reliance on them appropriate.

But even if this Court were to conclude that the documents could not be properly relied upon, there is sufficient remaining evidence in the affidavit for the warrant to survive.

Where law enforcement has conducted an illegal search and obtained evidence, the law generally forbids the use of that evidence in a subsequent search warrant as fruit of the poisonous tree. *See United States* v. *Leake*, 95 F.3d 409, 411-12 (6th Cir. 1996). However, reliance on that evidence in a search warrant does not necessitate suppression of the evidence recovered pursuant to that warrant if the warrant details sufficient probable cause when the tainted evidence is excised. *United States* v. *Jenkins*, 396 F.3d 751, 758-60 (6th Cir. 2005).

If the reference to the defendant's documents is removed from the warrant, considering what remains, there was sufficient independent evidence in the affidavit to find probable cause to search the residence. Beyond the defendant's plans, the search warrant affidavit describes the assault rifle with bump stock and ammunition found in the defendant's car, the handgun and

8

ammunition found hidden in the defendant's room, and the machete and BB gun also discovered in the defendant's room. Ex. 1 at 3-4. The affidavit recounts the witness's statements to law enforcement, including that the witness had seen "a letter she had read that was what she believed [was] a plan for Tres to harm a lot of people[.]" *Id*. at 4. As detailed in the affidavit, the witness also told law enforcement about the defendant's unexplained international travel, as well as his recent anger and aggression. *Id*. The numerous weapons and ammunition, as well as the witness's statements, provide sufficient probable cause for the Magistrate to issue the warrant, even with the references to the defendant's documents removed. The warrant is valid, and the evidence recovered pursuant to it need not be suppressed.

Finally, even if this Court concludes that the warrant improperly refenced the papers and what remains in the affidavit is insufficient to find probable cause to conduct the search, the good faith exception applies.

As discussed, suppression of evidence is an extreme remedy, "appropriate 'only when law enforcement officials operate in deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *United States* v. *Tucker*, 742 F. App'x 994, 998-99 (6th Cir. 2018) (quoting *United States* v. *White*, 874 F.3d 490, 497 (6th Cir. 2017)) (internal quotation marks and brackets omitted). When law enforcement operates in good faith, the Fourth Amendment does not require the exclusion of evidence obtained by officers reasonably relying on a warrant that is later held invalid. *United States* v. *Leon*, 468 U.S. 897, 913 (1984).

Given all that law enforcement had discovered and learned at the time of the warrant, it was not objectively unreasonable for the officers to rely on the warrant issued by the magistrate. The officer detailed the multiple weapons, the plans, and the statements of the firsthand witness. The officer described the locations of the documents and weapons, drawing a nexus between the place to be searched and the evidence sought. This was no bare bones affidavit, but instead a thorough recitation of relevant information sufficient to support a finding of probable cause.

9

Even if that warrant is found to be entirely deficient, it was not unreasonable for the officers to rely on it. Suppression of the resulting evidence is a serious consequence not warranted here.

### B. The Incorporated Warrant Affidavit Detailed the Location to Be Searched.

The defendant claims that his residential address was not on the face of the search warrant, only in the attached affidavit, rendering the warrant constitutionally deficient and requiring suppression of the resulting evidence. This argument is meritless.

The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched[.]" U.S. Const. amend. 4. This requirement is met when the description of the place "is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended." *United States* v. *Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989) (quoting *Steele* v. *United States*, 267 U.S. 498, 503 (1925)). This description may come from the warrant affidavit, provided that affidavit is attached to the warrant and is incorporated by reference. *Id*. at 1497. In *Groh* v. *Ramirez*, the case relied upon by the defendant, the Supreme Court explained that the Fourth Amendment does not "prohibit[] a warrant from cross-referencing other documents" and recognized "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." 540 U.S. 551, 557-58 (2004); *see, e.g.*, *United States* v. *Blakeney*, 942 F.2d 1001, 1025-26 (6th Cir. 1991).

Here, the search warrant affidavit listed the residential address, the parcel number for the property, and a physical description of the home to be searched. Ex. 1 at 5. That affidavit was explicitly incorporated into the warrant and attached to it. As the first page of the warrant detailed, the affidavit was "attached hereto, made a part hereof and marked 'Exhibit A[.]'" *Id*. at 1. The description of the property was thus part of the warrant.

The defendant references the affidavit being filed under seal in his argument that the warrant is invalid. The treatment of that affidavit on the public docket has nothing to do with the

defendant's notice as to what the officers are authorized to search. On the first page of the warrant, the officers were instructed that a "copy hereof must be handed to each person from whom property was being seized," and that warrant, as explained, included the affidavit. *Id*. at 1.

Because the affidavit detailed with particularity the place to be searched and the affidavit was explicitly incorporated into the warrant, the warrant was valid. The defendant's motion should be denied.

### III.     A Bill of Particulars Is Not Warranted.

The defendant has filed a motion for a bill of particulars, asking that the Government identify "the act(s) that it alleges constituted an attempt to cause bodily injury to women." Dkt. 27. Under Federal Rule of Criminal Procedure 7(f), the court may direct the Government to file such a bill, which creates strict limitations on the Government at trial. *See United States* v. *McQuarrie*, 817 F. App'x 63, 79 (6th Cir. 2020).

The defendant's motion is untimely. Under the Rule, the defense's motion for a bill of particulars must be filed within fourteen days after arraignment, unless with leave of the Court. Fed. R. Crim. P. 7(f). The defense's motion was filed 33 days after arraignment—well after the fourteen-day deadline—and the Court should not afford the defendant the opportunity to so move. *Compare* Dkt. 17 (arraignment on July 23, 2021) *with* Dkt. 27 (motion for bill of particulars filed August 25, 2021).

Even if the Court grants leave to file and reaches the merits of the defendant's request, the Court should deny the motion. A bill of particulars is intended to "minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States* v. *Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). "[T]he test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." *United States* v. *Musick*, 291 F. App'x 706, 724 (6th Cir. 2008).

A defendant is not entitled to the bill in order to obtain the details of the Government's legal theory of the case or all of the Government's evidence, including the acts that may be proven at trial. *Id.*; *United States* v. *Cooper*, 902 F.2d 1570, at *2 (6th Cir. 1990). Where there is a detailed indictment, a bill of particulars is unnecessary. *See Salisbury*, 983 F.2d at 1375. Providing discovery to the defendant also weakens the case for a bill of particulars. *Musick*, 291 F. App'x at 724-25; *see, e.g.*, *United States* v. *Anvari-Hamedani*, 354 F. Supp. 2d 768, 769-70 (N.D.O.H. 2005).

The indictment here goes well beyond a "plain, concise, and definite written statement of the essential facts constituting the offense charged," as required. Fed. R. Crim. P. 7(c)(1). In addition to detailing the two specific charges the defendant faces, the indictment lists sixteen paragraphs of additional information, most with dates, that put the defendant on notice of the Government's case. The Government has also produced over 10,000 pages of discovery materials to the defendant. A bill of particulars is unnecessary here.

Buried within his argument for a bill of particulars, the defendant appears to argue that the Indictment is somehow legally deficient. *See, e.g.*, Dkt. 27 at 2 ("What is lacking in the indictment is any direct claim that Mr. Genco actually attempted to cause bodily injury to anyone."). His efforts to engage as to whether attempt is a continuing offense or whether the details of the Indictment actually show an attempt to commit a hate crime are not appropriate for a motion for a bill of particulars. This is particularly so given that a bill of particulars cannot "save an invalid indictment." *Russell* v. *United States*, 369 U.S. 749, 770 (1962); *accord United States* v. *Sturman*, 951 F.2d 1466, 1479 (6th Cir. 1991). The Government disagrees with the defendant's characterizations of the law and the evidence, but the response to a motion for a bill of particulars is not the appropriate context in which to detail its legal theories and interpretations of the evidence. The defendant has sufficient notice as to the charges against him, as well as access to the evidence. The defendant's motion for a bill of particulars should be denied.

## IV. Count Two Properly Charges Possession of a Machinegun.

### a. The Pistol Is a Machinegun.

The defendant moves this Court to dismiss Count Two of the Indictment. Dkt. 28. Count Two of the Indictment charges the defendant with unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o). In his motion, the defendant asserts that the pistol does not qualify as a machinegun under the statute and thus cannot form the basis of this count.

The statutory definition of "machinegun" is:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845. The Code of Federal Regulations explains that "'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,' means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and 'single function of the trigger' means a single pull of the trigger and analogous motions." 27 C.F.R. § 479.11.

After seizing the Palmetto State Armory rifle and the Glock-type semiautomatic pistol from the defendant, firearms examiners with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") examined both weapons and prepared a report. *See* Exhibit 2 (ATF Firearms Report). As part of that inspection, the examiner test-fired the semiautomatic pistol. During those test fires, the examiner was able to fire up to "two rounds automatically with a single function of the trigger[.]" *Id*. at 3. The examiner inspected the pistol and found that the rear rails of the gun had been removed. According to the examiner, "[w]ith the rear rails removed, the slide will raise up during operation causing the firing pin not to engage the trigger bar cruciform" which allowed the pistol "to function like a machinegun." *Id*.

13

The defendant contends that since the test fires of the pistol could only produce two rounds with one pull of the trigger, instead of continuing to fire until the trigger was released or the ammunition exhausted, the pistol cannot as a matter of law be a machinegun. But such continuous fire is not required for a firearm to qualify as a machinegun under the statute. The plain text requires only that the firearm "shoot . . . automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845. That is precisely what the pistol did here – pulling the trigger once fired two rounds automatically. *See* Ex. 2 at 3. That meets the statutory definition of machinegun.

The defendant relies on *Gun Owners of America, Inc.* v. *Garland* for his limited definition of automatic. 992 F.3d 446, 472 (6th Cir. 2021) (decision vacated, *en banc* review pending).[1] In that case, the Sixth Circuit looked to a Supreme Court footnote, which explained "the terms 'automatic' and 'fully automatic' refer to a weapon that fires repeatedly with a single pull of the trigger. That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted. Such weapons are 'machineguns' within the meaning of the Act." *Id*. (quoting *Staples* v. *United States*, 511 U.S. 600, 602 n.1 (1994)). While it is certainly true that such a weapon qualifies as a machinegun under the statute, a machinegun is not confined by that definition alone, which the Sixth Circuit recognized. *Id*. (conceding that "[t]he Supreme Court's language may not necessarily foreclose the ATF's interpretation" that a bump stock rendered a firearm an automatic).

---

[1] In *Gun Owners of America*, a divided panel of the Sixth Circuit concluded that a bump stock cannot transform a semiautomatic weapon into a machinegun under the statute because, while a bump stock changes how the pull of the trigger is accomplished (namely by using the recoil of the weapon to push the trigger back into the user's finger), it does not change the fact that the weapon only fires one shot per trigger pull. 992 F.3d 446, 469-73 (6th Cir. 2021). This conclusion is contrary to the ATF's interpretation of the statute. The decision has been vacated and is pending rehearing *en banc*. *See Gun Owners of America* v. *Garland*, 2 F.4th 576 (6th Cir. 2021).

14

The plain text of the statute is clear that a machinegun is any weapon where "more than one shot" is expelled "by a single function of the trigger," which describes the pistol charged in Count Two of the Indictment. Count Two should stand.

      b. <u>Congress's Commerce Clause Power Extends to Machineguns.</u>

As the defendant acknowledges, the Sixth Circuit held twenty-five years ago that the federal ban on machineguns is a valid exercise of Congress's Commerce Clause power. *See United States* v. *Beuckelaere*, 91 F.3d 781 (1996); *see United States* v. *Faasse*, 265 F.3d 475, 490 (6th Cir. 2001). The defendant's position is not the law of this Circuit and should be rejected.

## **CONCLUSION**

For the reasons outlined, the defendant's motions should be denied.

                              Respectfully submitted,

                              VIPAL J. PATEL
                              Acting United States Attorney

                              *s/Megan Gaffney Painter*
                              Megan Gaffney Painter (NY 4849220)
                              Timothy S. Mangan (069287)
                              Assistant United States Attorneys
                              221 East Fourth Street
                              Suite 400
                              Cincinnati, OH 45202
                              (513) 684-3711

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Government's Omnibus Response in Opposition to Defendant's Motions* has been electronically served via the Court's CM/ECF system this 10th day of September, 2021, upon counsel of record.

*s/Megan Gaffney Painter*
Megan Gaffney Painter (NY 4849220)
Assistant United States Attorney