Felony Report to the
Highland County Prosecutor

## ALL ITEMS MUST BE COMPLETED

**Received on:**

| | | | |
|---|---|---|---|
| **Report #** | **Date of Arrest:** | **Still Incarcerated:** | **Date of release:** |
| 20R0302 | 3/12/2020 | yes | |

**Subject:** Tres Presley Genco
**DOB:** ▮
**SSN:** ▮
**Address:** ▮, Ohio 45133

**CHARGE**
Making Terroristc Threats
Click here to enter text.

**ORC SECTION**
2909.23
Click here to enter text.

**Co-Defendants:**

**Adult / Juvenile**
Adult / Juvenile
Adult / Juvenile
Adult / Juvenile
Adult / Juvenile

**Case File on Co-Defendants attached?:** N/A
If not attached, please explain why:

**Prior Criminal Records of Defendant:** No   If yes, attach copy of CCH

**Case Investigated by:**
1) Det. Erica Engle
2) Sgt. Antinore

**Subject Arrested by:**
1) Det. Antinore
2)

**Chain of Custody (Specify where each item is now, if submitted to BCI, then list when & by who, etc.):**
All evidence in this case other than guns and electronics went from Tres Genco's home to the evidence locker at the Highland County Justice Center. All electronics in this case went front the home of Tres Genco to the Highland County Sheriff's Office released then to Det. Tony Casper and transported to Ohio Department of Public Safety where it was analyzed. As of the date on this Felony Packet the Highland County Sheriff's Office had not received the electronics back from Ohio Department of Public Safety. The firearms in this case was recovered from the home of Tres Genco and his car from there it was placed into evidence at the Highland County Sheriff's Office and then released to be analyzed to Timur Housum with the ATF. Like the electronics the Highland County Sheriff's Office has not received these items back at this time.

**Brief Summary of Facts:**
On March 12, 2020 at 4:05 PM SGt. Seaman was dispatched to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Highland County Ohio along with Deputies Young and Myers. Dispatch was on 911 with a woman who was identified as ▮▮▮▮▮▮▮▮ She reported that ▮▮▮▮ was out of control. She told dispatchers that he was in his bedroom. He had threatened to "take care of her" and she reported that she had heard him "cock" a gun.



All units arrived on scene at 4:16 PM. Sgt. Seaman pulled into the driveway of the home. The other units pulled in behind him. The home was a single wide trailer setting parallel with the road. It was around 200 feet from the road. Once on seen those units took tactical positions in front of the home. They had been given information that the suspect was in the left end or the north end of the mobile home. There was a clear unobstructed view of the front of the house with a window into the bedroom. The window was covered with a blind. Dispatch still had the caller on the phone. Sgt. Seaman had them instruct her to exit the house if she could and come to the Deputies. A female exited the house still on the phone with the dispatcher. Sgt. Seaman instructed her to come toward him. He took her to the rear of a patrol car to question her. Deputies Myers and Young held there position on the house.

The female identified herself as ▮▮▮▮▮▮▮ She told Sgt. Seaman that ▮▮▮▮ was in the house now by himself. He had been going crazy and had threatened her. She had heard him in his room "cock" a gun. She was 100% sure it was a gun. She told them that she knew he had a rifle. She claimed that his actions had become erratic and somewhat violent over the past several months. Sgt. Seaman asked ▮▮▮ if she could get ▮▮▮▮ on the phone. She wanted to go back into the house to get him to come out. Sgt. Seaman would not let her and instructed her to call him. ▮▮▮▮ answered her call. Sgt. Seaman was able to talk with him. He told him that they needed to talk. Sgt. Seaman instructed him to come out of the front door of the home with his hands in plain view. Sgt. Seaman told him not to have any weapons when he came out. The male complied and exited the house. He was approached and taken into custody without incident.

After hearing the radio traffic from Sgt. Seaman Det. Antinore and myself responded to the residence. Upon our arrival weobserved Sgt. Seaman along with Deputies Young and Myers, talking with a male in handcuffs. We approached them and overheard the male telling Sgt. Seaman that he had a rifle in the backseat of his car. Sgt. Seaman asked the male if he could search the car and remove the rifle.

The male gave verbal permission. After checking the back seat and not locating the weapon, the male advised it may be in the trunk. Det. Antinore opened the trunk and moved a large cloth cover and located an AR-15 rifle equipped with a "Bump-Stock" along with several loaded magazines, boxes of ammunition, and body armor. We advised Sgt. Seaman that we were concerned with what we seen, and he agreed. Upon removing the rifle and body armor from the vehicle, ▌(who Sgt. Seaman had previously identified) had an audible emotional reaction. Det. Antinore asked her what was wrong, and she stated that in the past, before ▌ had joined the Army, she had discovered writings that she believed indicated that he was planning to hurt someone. ▌ then advised that ▌ also had a handgun, as she had seen it a few days prior, but was unsure where he kept it. Sgt. Antinore learned the male that was detained was Tres P. Genco and was ▌ He then went to the rear of Dep. Myers' patrol car where Tres was seated. He opened the door and introduced himself to Tres. Det. Antinore then immediately read him his Miranda Rights and he stated he understood those rights. Det. Antinore then asked him about having a handgun and he stated he did not have one. Dep. Myers then approached the conversation and he asked Dep. Myers to remain at the vehicle during the remainder of the conversation. Det. Antinore asked Tres if he would grant permission for us to search his bedroom for a handgun. Tres stated that we could search the bedroom. He was then that Dep. Myers would remain at the patrol car during our search, and that at any time if he wished to retract that permission, or wanted us not to search any further, to let Dep. Myers know and that Dep. Myers would radio us and the search would stop immediately. Tres stated he understood. Sgt. Seaman, Dep. Young, Det. Antinore and I then went into the home and back to Tres' bedroom to look for the handgun. While inside the bedroom, I searched inside a plastic tote box with open top. While doing so, I observed a handwritten document that detailed what appeared to be plans to carry out an attack at "▌" campus on May 23, 2020. This document was set aside, and soon thereafter Dep. Young located a handgun hidden inside the heating/AC vent. During this process, Det. Antinore began making calls to federal law enforcement agencies regarding the writings. After Dep. Young advised he had located the handgun, Det. Antinore advised Tres of the discovery of the weapon but had not gotten the opportunity to mention the writings before Tres stated that if we located the weapon he wished to have an attorney. Tres was advised that was his right, and that we would respect his wishes. Units cleared the home immediately and Tres was transported to the Highland County Justice Center.

For the next two hours Det. Antinore spoke on the phone with several different federal law enforcement agencies regarding our concerns. It was then decided that until federal law enforcement had a chance to look at the facts of the case, our office would be handling any potential criminal charges. Det. Antinore and I left the scene to prepare a Search Warrant for the home and property. Once a Search Warrant had been obtained, Det. Antinore, Sgt. Bowen and myself executed that warrant. Multiple items were seized as a result and specifically the hand written letter of Tres Presley Genco. This letter started out with the chemical compound letters and numbers combined for Mustard Gas ▌ then continue with the date of May 23, 2020 290 days! M16 is optimal will get arms training In Georgia. KC needs to be huge! 3,000? Aim big then on down the page it is written that he needs a plot take writing class and Plausable PETN! Which is Pentaerythritol tetranitrate (PETN) an explosive material. He also depicts he will need proper planning then writes Hoover Dam? Ambuscade( which is an English word meaning Ambush.) Tres then goes on in this letter of what I

believe to be things he has or is going to research as it is written in the form of a question. How do gatling guns work? Area denial
M134-24 volt D.C. 1KW 1/2
made by General Electric   Phrases: Delinker ( which is a device in a gun linking ammunition.) - complicated
motor drives barrels and delinker "5-8,000 usd" for a motor? Gears important on the motor barrel delinker "serialized."Bolt on each barrel, fire pin releasing.

**Summary of Defendant(s) statement to Law Enforcement (list date and to whom made)**
Tres Presley Genco was interviewed on March 13,2020 by Sgt. Antinore and myself at the Highland County Sheriff's Office this interview was recorded for video and audio. During that interview Tres indicated that he did write the letter and planned the attack but never carried it out. Tres stated when he wrote the letter he was in a dark place in his life and depressed and bored. Tres stated that he did want to hurt people and how he wanted to hurt people.

**Are item being submitted to lab for analysis?** Yes
**Any field test performed, if so, who performed:**
**Date and location field test performed:**

## Physical Evidence (Including Photographs & Tapes)

**Item description**

1. Digital Evidence
   **Where obtained**: HCJC Recording System
   **Obtained by**: Det. Engle        **Date obtained**: 3/13/2020
   **Now in possession of:** Det. Erica Engle

2. Crime scene photos
   **Where obtained**: ███████████████ Ohio 45133
   **Obtained by**: Sgt. Antinore        **Date obtained**: 3/13/2020
   **Now in possession of:** Det. Engle

3. Hotel Stationary w/ plan
   **Where obtained**: Red Tote in bedroom of Tres Genco
   **Obtained by**: Det. Engle        **Date obtained**: 3/12/2020
   **Now in possession of:** Det. Engle

4. Floor Plan
   **Where obtained**: Desk Drawer in Tres Bedroom **Date obtained**: 3/12/2020
   **Obtained by**: Det. Engle
   **Now in possession of:** Det. Engle

5. Ar- 15 Serial # SCD040266
   **Where obtained**: 2009 Audi Registered to Tres Genco
   **Obtained by**: Det. Engle        **Date obtained**: 3/12/2020
   **Now in possession of:** ATF

6. P80 Handgun
   **Where obtained**: Floor Heating/AC vent in Tres bedroom
   **Obtained by**: Dep. Young        **Date obtained**: 3/12/2020
   **Now in possession of:** ATF

7. 2009 Audi TT  VIN # TRUJF38J991018902
   **Where obtained**: ███████████████ Ohio 45133
   **Obtained by**: Det. Engle        **Date obtained**: 3/13/2020
   **Now in possession of:** Highland County Sheriff's Office

8. Map of Greece
   **Where obtained**: Tres bedroom on bathroom counter
   **Obtained by**: Det. Engle        **Date obtained**: 3/12/2020
   **Now in possession of:** Det.Engle

9. Bullet proof vest
   **Where obtained**: Trunk of the 2009 Audi with the AR-15
   **Obtained by**: Det. Engle        **Date obtained**: 3/12/2020
   **Now in possession of:** Det. Engle