UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 1:21-CR-85 |
| | : | |
| | : | JUDGE SUSAN J. DLOTT |
| v. | : | |
| | : | |
| | : | **GOVERNMENT'S RESPONSE IN** |
| TRES GENCO, | : | **OPPOSITION TO DEFENDANT'S** |
| | : | **MOTION TO DISMISS** |
| Defendant. | : | |
| | : | |
| | : | |

The United States respectfully submits this response in opposition to the defendant's motion to dismiss Count One of the Indictment for lack of venue. *See* Dkt. 34. Because the defendant's attempted hate crime was committed in part in the Southern District of Ohio, this district is the proper district to prosecute his offense and his motion should be denied.

## BACKGROUND

Defendant Tres Genco planned to massacre women in an attack that he hoped would reach a "kill count" of up to 3,000 people. *See* Dkt. 7 ¶ 8. He handwrote a macabre to-do list, working his way through the items in a countdown to "May 23, 2020." *Id*. As he noted in his list, "Proper planning!" was necessary to pull off his vision. He wrote, among other things, that "M16 is optimal, convert or Mil-spec" and "[w]ill get arms training in BCT, Georgia." *Id*. Consistent with his list, Genco purchased a Palmetto State Armory 5.56x45mm caliber firearm and attached a bump stock, converting the weapon into a fully automatic rifle. *See id*. ¶ 15. He assembled a Glock-style 9mm Luger caliber semiautomatic pistol, removing the rear rails of the weapon, rendering it a machinegun. *Id*. ¶¶ 16, 20. He attended Army Basic Training in Georgia, as he had planned. *Id*. ¶ 11.

In addition to following his checklist, Genco took other steps. For example, Genco purchased tactical gloves, a bullet proof vest, a hoodie bearing the word "Revenge," a Bowie knife, and a skull face mask. *Id*. ¶ 7. He hid the modified rifle, along with several loaded magazines and body armor, in the trunk of his car. *Id*. ¶ 15. He conducted internet searches for sororities and a university in Ohio, and he researched police scanner codes for Columbus, Ohio police and university police. *Id*. ¶ 14. And he drafted documents outlining his intent to "slaughter" women "out of hatred, jealousy, and revenge." *Id*. ¶ 6.

Genco also conducted surveillance in the location of a university in Ohio. *Id*. ¶ 13. IP records from his email account show him logging in at an IP address on the same day that he drafted a note that appears to detail his surveillance of a school. *See id*. An FBI tool showed the IP address came back to Alliance, Ohio, a location over three hours away from his home in Highland County, Ohio, where he was later arrested and his weaponry and to-do list were discovered. *See id*. ¶ 15.

Genco now argues that, because Alliance, Ohio is located in the Northern District of Ohio, this district does not have venue over Count One, the attempted hate crime. However, for the majority of this plot, Genco was living, operating, and scheming in the Southern District of Ohio. Law enforcement interrupted his plot, located his arsenal, and arrested him all in the Southern District of Ohio. Because the law of attempt criminalizes more than a single act, and because many of Genco's acts occurred in our district, venue lies here.

## ARGUMENT

### I.     The Law of Attempt Forbids More Than a Single Act.

In his motion to dismiss, Genco contends that attempt is not a "continuing" offense, relying on decades-old cases concerned with calculating the statutes of limitations for unrelated crimes. *See Toussie* v. *United States*, 397 U.S. 112, 114-15 (1970) (determining statute of limitations on statute forbidding males from failing to register for the draft); *United States* v. *Del*

2

*Percio*, 870 F.2d 1090, 1095 (6th Cir. 1989) (calculating statute of limitations on failure to comply with certain fire safety regulations issued by the Nuclear Regulatory Commission). From there, he contends that attempt requires an overt act, and the only overt act he perceives is the surveillance purportedly conducted in Alliance, Ohio.[1] Since that is not in our district, he argues, the attempted hate crime charge must be dismissed. This argument misconstrues the law of attempt.

The crime of attempt requires the Government to prove "(1) the defendant's intent to commit the criminal activity; and (2) that the defendant committed an overt act that constitutes a substantial step toward commission of the crime." *United States* v. *Wesley*, 417 F.3d 612, 618 (6th Cir. 2005) (internal quotation marks omitted). Because the Government must prove both intent and a substantial step taken towards that which is intended, "'attempt' is to be construed in a 'broad and inclusive manner.'" *United States* v. *Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999) (citing *United States* v. *Reeves*, 794 F.2d 1101, 1103 (6th Cir. 1986)). The two necessary components of attempt may be proven separately – that is, the law "does not mandate that the activity constituting a substantial step must be *sufficient* to prove that the defendant had the subjective, specific intent to commit a crime." *Id*.

The "substantial step" component is critical to the crime of attempt because "of the problems proving intent in attempt cases and the danger of convicting for mere thoughts, desires,

---

[1] In his instant motion, Genco refers to his previously filed motion for a bill of particulars. In Genco's view, the Government must identify which specific act within the evidence presented constitutes the substantial step for attempt. Such a demand is unwarranted. The Government need not limit itself to defining for the jury what precisely comprises the substantial step. *See United States* v. *Hofus*, 598 F.3d 1171, 1176 (9th Cir. 2010) ("[W]e have never held that jurors must unanimously agree as to which particular act by the defendant constitutes a substantial step. Rather, the jury must unanimously agree that the substantial step requirement has been satisfied, as it was properly instructed."); *cf. United States* v. *Burns*, 298 F.3d 523, 539 (6th Cir. 2002) (in evaluating sufficiency challenge to attempt charge, Sixth Circuit found Government presented evidence of multiple substantial steps).

or motives[.]" *Id*. at 975. To avoid this ill, the law requires that the "defendant's objective conduct, *taken as a whole*, must unequivocally corroborate the required subjective intent[.]" *Id.* (emphasis added).

As the language above suggests and the courts have established, a substantial step need not be a single action, but can instead be multiple acts. *Wesley*, 417 F.3d at 618-19 ("[W]e require that the substantial step consist of objective *acts* that mark the defendant's conduct as criminal in nature." (quoting *Bilderbeck*, 163 F.3d at 975) (emphasis added)); *accord United States* v. *Fleming*, 667 F.3d 1098, 1108 (10th Cir. 2011); *United States* v. *Yost*, 479 F.3d 815, 819 (11th Cir. 2007). In *United States* v. *Wesley*, for example, the Sixth Circuit found sufficient evidence to support the defendant's conviction of attempted bank robbery because he committed multiple acts—including recruiting a getaway driver, communicating specific plans, and surveilling the bank—that constituted the substantial step. *Wesley*, 417 F.3d at 620. Similarly, in *United States* v. *Alebbini*, the Sixth Circuit dismissed the defendant's argument that he had not committed a substantial step towards providing material support to ISIS by noting that the defendant said goodbye to his friends and family, drove over an hour to the airport, obtained a boarding pass, and went towards the security checkpoint. 979 F.3d 537, 547 (6th Cir. 2020). As the cases make clear, the Government need not limit itself to proving a single overt act to establish an attempt crime, but may instead present evidence of multiple, objective acts that corroborate the defendant's subjective intent to commit a crime.

The defendant's conduct outlined in the indictment establishes both his subjective intent to kill women and his objective acts corroborating that intent. And because most of that conduct occurred in the Southern District of Ohio, as further described *infra*, venue is proper in this district and his motion to dismiss should be denied.

4

## II. Venue Is Proper in the District Where the Crime Began, Continued, or Was Completed.

Under the Sixth Amendment to the United States Constitution, individuals accused of a crime must be prosecuted in the "district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]"  U.S. Const. amend. VI.  This directive also appears in the Federal Rules of Criminal Procedure, specifically, Rule 18: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.  Congress has provided that for offenses "begun in one district and completed in another, or committed in more than one district," the Government may prosecute such offenses "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).

As described, the crime of attempt is not necessarily a single moment or action in time, but instead may encompass a broader range of conduct.  *See United States* v. *Davis*, 689 F.3d 179, 187 (2d Cir. 2012) (venue for an attempt crime is "wherever the attempt was begun, continued, or completed" (ellipses omitted)).  Here, the defendant assumes that the only relevant overt act is his surveillance seemingly conducted in the Northern District of Ohio.  But Genco committed multiple acts in the Southern District of Ohio as well, any of which could constitute all or part of the substantial step needed to sustain the attempt charge.  For example, Genco acquired and modified the rifle and the pistol, rendering both automatic and thus more efficient killing machines, after researching gun modifications and downloading illustrated guides to constructing M-16s.  *See* Dkt. 7 ¶¶ 10, 15, 20.  He wrote both his manifesto, which outlined his philosophy of hate, and his document "isolated," which he evidently intended to be found after he committed his planned murders.  *See id.* ¶¶ 6, 12; *see also United States* v. *LaPointe*, 690 F.3d 434, 444 (6th Cir. 2012) ("Demonstrating a substantial step does not require a physical act; a

5

defendant's words alone can be a substantial step." (internal quotation marks omitted)). He conducted online research of potential targets for his attack, including sororities and a university in Ohio. *See* Dkt. 7 ¶ 9. He researched and saved police scanner codes for Columbus, Ohio police and university police. *Id*. ¶ 14. He bought body armor and ammunition, and hid them with the modified rifle in the trunk of his car. *Id*. ¶ 15. Because Genco acted in our district in ways that constitute a substantial step, venue lies here. *See Davis*, 689 F.3d at 187 ("Most obviously, venue for attempt will lie in the district where a substantial step toward commission of the offense occurred."); *see also United States* v. *Davis*, 531 F. App'x 601, 606 (6th Cir. 2013) (venue for murder proper in the district where the defendant "hatched his plot and executed parts of it," even though murder was committed in different district).

## CONCLUSION

For the reasons outlined, the defendant's motion to dismiss should be denied.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Megan Gaffney Painter*
Megan Gaffney Painter (NY 4849220)
Timothy S. Mangan (069287)
Assistant United States Attorneys
221 East Fourth Street
Suite 400
Cincinnati, OH 45202
(513) 684-3711

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Government's Response in Opposition to Defendant's Motion to Dismiss* has been electronically served via the Court's CM/ECF system this 13th day of October, 2021, upon counsel of record.

*s/Megan Gaffney Painter*
Megan Gaffney Painter (NY 4849220)
Assistant United States Attorney