# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| Plaintiff, | : | | |
| vs. | : | Case No. 1:21CR085 | |
| TRES GENCO, | : | Judge Dlott | |
| Defendant. | : | | |

## MOTION TO DISMISS COUNT 1 OF THE INDICTMENT BASED ON COMMERCE CLAUSE

Now comes the Defendant, TRES GENCO, by and through counsel, and hereby moves the Court to dismiss count 1 of the indictment in this matter based on violations of the requirements of the Commerce Clause. The grounds for this request are contained in the attached memorandum in support.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

*s/ Richard Monahan*
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

## Memorandum in Support

Count 1 of the indictment in this case charges that Mr. Genco committed an "attempt" to "willfully cause bodily injury to women," pursuant to 18 U.S.C. § 249(a)(2). The statute requires that the attempt to injure women had a connection to interstate commerce through one of several means, as detailed in 18 U.S.C. § 249(a)(2)(B). Mr. Genco submits that this statute is invalid both on its face and as applied to this case because the alleged conduct is entirely intrastate and non-commercial, and thus not "in" interstate commerce. Accordingly count 1 of the indictment should be dismissed.

### I. Facts

The indictment in this case provides a long laundry list of pre-offense conduct in reference to count 1. Mr. Genco has challenged this charging decision both in his Motion for Bill of Particulars (R. 27) and Motion to Dismiss Count 1 Based on Improper Venue (R. 34). In response, the government has identified the conduct charged in the indictment that it purports actually constituted the alleged "attempt to willfully cause bodily injury to women" in this case. In its Response in Opposition, the government claimed that following items constituted an attempt to kill women: Personal writings of Mr. Genco (August 2019 and January 2020); internet research (August 2019, January 15, 2020, and March 12, 2020); acquiring a pistol, a rifle, ammunition, and body armor in early 2019; and surveillance at Mt. Union University in Alliance, Ohio (January 15, 2020). (R. 35, pp. 5-6).

In trying to identify what it deemed an "attempt," however, the government has conflated subjective acts that may constitute evidence of **intent** versus objective overt acts that constitute a **substantial step** toward committing a crime (an attempt). As will be demonstrated below, the vast majority of the conduct identified by the government falls into the category of proving subjective

2

intent, which cannot support Commerce Clause jurisdiction. At the end of the day, the government has identified no objective overt acts constituting an attempt that occurred in the course of commerce, as required by § 249. Accordingly, count 1 of the indictment should be dismissed.

## II. Argument

The government in this case has significantly stretched a federal hate crime statute to fit conduct that, in reality, is a purely state offense. In fact, the State of Ohio has already fully and completely prosecuted the very conduct at issue in the federal indictment in a state case for making terroristic threats. Mr. Genco was convicted and sentenced to a term of 17 months, which he has already completely served. Not content with the state's exercise of its primary authority over criminal conduct, the government has now charged this same conduct under the auspices of the federal hate crime statute, 18 U.S.C. § 249(a)(2), which requires that the defendant "attempt to kill women" through some means of interstate commerce. This statute is invalid both on its face and as applied to Mr. Genco because the alleged "attempt" (overt act constituting a substantial step) is entirely intrastate and non-commercial, and thus not "in" interstate commerce.

### A. Limitation of federal authority over state crimes

Because "[s]tates possess primary authority for defining and enforcing the criminal law," United States v. Lopez, 514 U.S. 549, 561 n.3 (1995)(quotations omitted), the Supreme Court has sharply limited federal regulation of local, noncommercial crime through a series of decisions. See Lopez, 514 U.S. at 567-68 (1995)(invalidating federal prohibition of gun possession near schools); United States v. Morrison, 529 U.S. 598, 617-19 (2000)(invalidating federal regulation of gender-motivated violence); Jones v. United States, 529 U.S. 848, 857-58 (2000)(refusing to interpret federal arson statute to cover the "paradigmatic common-law state crime" of arson of a noncommercial building); Bond v. United States, 572 U.S. 844, 848, 860 (2014) (refusing to

3

interpret federal chemical weapons statute to extend to "local" attempted poisoning by a jilted spouse). These cases recognize that federal criminalization of "conduct already denounced as criminal by the States" affects "the sensitive relation between federal and state criminal jurisdiction" by "displac[ing] state policy choices." Lopez, 514 U.S. at 561 n.3 (quotations omitted).

To preserve this federal-state balance, the Supreme Court requires a "clear indication that Congress meant to reach purely local crimes, before interpreting [a federal] statute's expansive language in a way that intrudes on the police power of the States." Bond, 572 U.S. at 860; see Jones, 529 U.S. at 857-58. And even when Congress is clear, the Commerce Clause does not permit it to "obliterate [any] distinction between what is national and what is local." Lopez, 514 U.S. at 557.

Based on the above-cited line of Supreme Court decisions, the hate crime statute at § 249 is an improper exercise of Congress' Commerce Clause authority. The statute has federally criminalized the common law offenses of assault and battery, purely non-commercial crimes, based on insufficient connections to commerce. The Morrison case from Supreme Court makes this patently apparent in its striking down of a similar statute, the Violence Against Women Act of 1994. The Sixth Circuit has likewise recognized a similar problem in the arson statute. See United States v. Doggart, 947 F.3d 879 (6th Cir. 2020)(Sutton, J.)(warning that the arson statute as interpreted by the government threatened to "transform virtually every arson in the country into a federal offense").

It does not appear that the Sixth Circuit has directly decided this issue, however, it must be noted that the district court in the Eastern District of Kentucky has found that § 249 is a valid exercise of commerce authority on its face. United States v. Jenkins, 909 F. Supp. 2d 758 (E.D.

Ky 2012). Finding no binding precedent on the subject, the court reluctantly held that § 249 contained a sufficient jurisdictional "hook" in order to establish proper Commerce Clause jurisdiction on the face of the statute for hate crimes based on existing commerce cases from other contexts. Id. at 770-73 ("this is the ultimate outcome of the current prevailing constitutional precedents in this Circuit"). Nonetheless, the court stressed that each prosecution must be judged on a case-by-case basis to determine if an as-applied challenge to the statute may be appropriate based on the facts presented. Id. at 771 ("the case-by-case inquiry. . . must be applied to the facts of this case to see if the HCPA captures conduct beyond the reach of Congress or is limited to activity that Congress is empowered to regulate under the Commerce Clause"). Thus, even if this Court likewise finds that § 249 is valid on its face, the Court must nonetheless further determine if the statute is valid as applied to the facts of the present case. Such analysis is provided in depth below.

**B. As applied challenge: Pre-offense intent evidence cannot establish commerce**

Count 1 of the indictment in this case blurs any distinction between national and local crime by opening up a new and undefined universe of criminal offenses to federal Commerce Clause regulation based on ubiquitous, everyday actions the defendant undertakes before the attempt offense, such as writing notes, driving a car, and searching the internet. It is hard to think of a crime that will not be preceded by such acts. Yet the indictment relies on such pre-offense acts to stretch its reach to a wholly intrastate crime. This kind of open-ended federal intrusion cannot be squared with states' primary authority to "define and enforce the criminal law." Lopez, 514 U.S. at 561, n.3.

As noted above, the government argued in its response that a series of events in this case over a 15 month time period constituted an "attempt." (R. 35, p. 5-6). In fact, the grand bulk of

5

what the government identified in its response as the "attempt" included the writing of private thoughts by Mr. Genco and internet searches he conducted. In arguing that these acts constituted an "attempt," the government conflated subjective proof of intent on one hand and objective proof of overt acts constituting a substantial step toward committing the offense on the other. Under the government's theory, any thought a defendant had that utilized a cell phone or the internet could establish federal jurisdiction over a state crime. But even under the case law cited by the government in its response, where the government has separate evidence of the defendant's intent, there must nonetheless be objective evidence of an overt act constituting the attempt that corroborates the intent evidence. United States v. Wesley, 417 F.3d 612, 618 (6th Cir. 2005). As the Sixth Circuit stated in Wesley:

> Because of the problems of proving intent in attempt cases and the **danger of convicting for mere thoughts, desires, or motives**, we require that the substantial step consist of objective acts that mark the *619 defendant's conduct as criminal in nature. This **objective conduct must unequivocally corroborate** the required subjective intent to engage in the criminal conduct.

Id. at 618-19 (emphasis added)(internal citation omitted).

Thus, there is a clear distinction between pre-offense actions that may show intent versus objective overt acts that constitute an attempt. If the government is permitted to use any written thought or expression of intent to establish commerce because of the use of a cell phone or the internet, essentially every single state crime is rendered a federal offense. Had the Lopez defendant written a note that he planned to possess a firearm near a school, Googled the school's address, or drove there in a car, his offense might have been covered. The Morrison defendant's conduct might have come within the Commerce Clause too had he scribbled his plans on a piece of paper, looked up the victim's address online, or driven his car to her dormitory before assaulting her. Virtually

any crime could be linked to interstate commerce in this way, and none would be beyond federal reach.

The casualty of this limitless standard is federalism. States already penalize conduct such as Mr. Genco's; in fact, the State of Ohio prescribed the very conduct in this case and Mr. Genco was convicted and punished as such. Congress' "provi[sion] [of] a[n additional] remedy" for the same conduct interferes with states' judgment about how best to penalize crime, by "increas[ing] the total penalty," Brzonkala v. Virginia Polytechnic Inst., 169 F.3d 820, 841 (4th Cir. 1999). If all crime is potentially subject to federal regulation, states no longer have the final say on how (or whether) any crime is punished. The federal indictment's charge of a state crime through expansive reading of the federal hate crime statute magnifies the burden on states by preventing them from knowing in advance how far their exclusive criminal jurisdiction extends. Jones and Bond instruct courts to avoid such interference in states' criminal law policy judgments by construing federal statutes' jurisdictional elements narrowly. A narrow interpretation is possible here, because § 249 expressly requires that the "offense" itself—not pre-offense conduct—be in interstate commerce.

Moreover, if the Court were to label private writings and thoughts of Mr. Genco as offense conduct that affected commerce, this would violate the First Amendment. "The First Amendment generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed" or the speaker's viewpoint. R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 391-92 (1992). The government also may not penalize speech based on its effect on the listener, as "[l]isteners' reaction . . . is not a content-neutral basis for regulation." Forsyth County v. Nationalist Movement, 505 U.S. 123, 134 (1992). The government's proposition conflicts with this precedent by suggesting that pre-offense writings support commerce clause jurisdiction based on its content and/or effect on any listener.

7

In sum, evidence of pre-offense actions of a defendant used to show intent cannot form the basis for Commerce Clause jurisdiction. Each of the jurisdictional provisions of § 249(a)(2)(B) require that the "conduct," meaning the "attempt to kill women," occur in connection with the listed form of commerce. Personal writings and internet searches, while they may show thoughts or motivations, are not attempts to kill women and cannot be the jurisdictional hook for this offense.

**C. Firearm evidence too tenuous to establish nexus to commerce**

In addition to the intent evidence referenced above, the government further identified Mr. Genco's alleged acquisition of firearms and other accessories in **early 2019** as an "attempt to kill women." Yet, the indictment provides on its face that Mr. Genco did not first involve himself in Incel until **months later in July**. And it is this alleged Incel affiliation that the government avers motivated the defendant to commit the hate crime. It is impossible that the acquisition of guns and accessories (in early 2019) was an attempt to commit a hate crime that, by the government's claims, was formulated in July and thereafter.

The government's faulty logic in this regard leaves it at bottom with the following expansive argument: Mr. Genco's possession of guns at the time he joined Incel and wrote negative things about women brings the case within federal jurisdiction because the guns he already owned were manufactured in another state than Ohio. Clearly, commerce jurisdiction cannot be applied in this expansive fashion given the existing Supreme Court precedents.

Taking the government's rationale to its logical extreme, consider the following. A man purchases a gun and a year later starts giving thought to using it to brandish during purse snatchings. He thinks about targeting women because he believes that they are more likely to carry purses and would be easier marks than men. He never acts further on these thoughts. Under the

8

government's theory, this person is already guilty, at the point he formed the thoughts, of attempting to commit a federal hate crime under § 249. This is so because either the prior purchase or the possession of the firearm constitutes an "attempt" under the government's theory, once consummated by his subsequently formed thoughts. This is problematic both in terms of the exaggeratedly broad reach of the attempt law under these circumstances and the fact that this theory renders all personal crimes offenses federal. Almost every motivation for any offense could arguably be tied to something about the person's gender, orientation, race, color, or belief system. Such clearly is not the intent of the reach of federal jurisdiction and the Commerce Clause, and accordingly the government's interpretation should not be adopted.

### D. The "surveillance" at Mt. Union University is not commerce as a matter of law

Mt. Union University is in Ohio, and would not require interstate travel. Thus, there is nothing about this incident that establishes a connection to commerce. The government did make a broad allegation in the indictment that Mr. Genco used a "motor vehicle" as part of the interstate commerce in this case. It is not clear if the "motor vehicle" assertion relates to Mt. Union University or not. More importantly, the government has no evidence at all that a car was driven to Alliance, Ohio by Mr. Genco on the date alleged. While this is potentially the only averment in the entire indictment that, if it were true, could constitute an objective overt act (an attempt), the government has no proof it was in interstate commerce, and accordingly it cannot support federal jurisdiction in this case.

**III. Conclusion**

In upholding an as-applied challenge to the government's charge of arson for setting fire to a local church, the Sixth Circuit provided the follow insight about its rationale:

> Three canons of construction reinforced the Court's conclusion. One was the rule of lenity. This is a criminal statute after all. Another was the principle that, unless Congress speaks "clearly," the federal courts will not assume that it means to change the "federal-state balance in the prosecution of crimes." Arson is a quintessential state law crime, and the power to regulate arson under interstate commerce includes the power to marginalize any local regulation of the topic (by creating higher federal sentences for the same crime) or to preempt it (by barring any local regulation of the topic). The third canon was that, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."

United States v. Doggart, 947 F.3d 879 (6th Cir. 2020)(quoting Jones v. United States, 529 U.S. 848, 857-858 (2000))(internal citations omitted).

These exact same principals are equally applicable in an as applied challenge to §249. It is a criminal statute to which the rule of lenity must be applied. Assault and battery, like arson, are "quintessential state law crimes." Thus, as such, this Court should interpret § 249 to not cover the criminal conduct in this case, which was already duly prosecuted by the state. The pre-offense actions labelled an "attempt" by the government cannot constitute overt acts to support Commerce Clause jurisdiction, and the remaining conduct referenced by the government was not truly "in" commerce such as to justify federal jurisdiction over these quintessentially state crimes.

Based on the foregoing, Mr. Genco respectfully requests that the Court dismiss count 1 of the indictment based on violations of the requirements of the Commerce Clause

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

*s/ Richard Monahan*
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Megan Gaffney Painter, Assistant United States Attorney, via Electronic Case Filing, on this day of 6th day of October, 2021.

*s/ Richard Monahan*