**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:21-CR-85** |
| | : | |
| | : | **JUDGE SUSAN J. DLOTT** |
| **v.** | : | |
| | : | |
| | : | **GOVERNMENT'S RESPONSE IN** |
| **TRES GENCO,** | : | **OPPOSITION TO DEFENDANT'S** |
| | : | **MOTION TO DISMISS COUNT ONE** |
| **Defendant.** | : | **BASED ON COMMERCE CLAUSE** |
| | : | |
| | : | |

The United States respectfully submits this response in opposition to the defendant's motion to dismiss Count One of the Indictment for violating the Commerce Clause. *See* Dkt. 38. The Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act (the "Hate Crimes Act") was a valid exercise of Congress's power, and is facially constitutional. Its application to this case is also constitutional because the defendant used channels and instrumentalities of interstate commerce, and the defendant's motion should be denied.

## BACKGROUND

Defendant Tres Genco planned to massacre women in an attack that he hoped would reach a "kill count" of up to 3,000 people. *See* Dkt. 7 ¶ 8. As he built up to his attack, he conducted internet research, posted his hate online, drafted his manifesto and farewell document on his computer, conducted surveillance that he documented on his cellular phone, purchased weapons that traveled in interstate commerce, modified those weapons based on instructions he downloaded from the internet, and loaded his vehicle with a modified rifle and ammunition. *See id.* ¶¶ 5-10, 12-15.

Despite these facts, the defendant has filed his second motion to dismiss Count One, based on a new theory that the Hate Crimes Act facially and as applied exceeds Congress's authority under the Commerce Clause.

## ARGUMENT

### I.        The Hate Crimes Act is Valid Exercise of Congress's Authority.

The United States Constitution affords Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States," in what is referred to as the Commerce Clause. U.S. Const., art I, § 8. To facilitate the use of this power, the Constitution grants Congress the right "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers[.]" *Id*.

Under the auspices of the Commerce Clause, the Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States* v. *Lopez*, 514 U.S. 549, 558 (1995). "First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce[.]" *Id*. at 558-59 (internal citations omitted).

The defendant contends that the Hate Crimes Act provision with which he is charged, 18 U.S.C. § 249(a)(2), is facially unconstitutional because it exceeds Congress's power under the Commerce Clause. He cites no court that has been persuaded that the provision falls outside Congress's constitutional authority, nor could he. Generally, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States*

v. *Salerno*, 481 U.S. 739, 745 (1987). And, specifically, the courts that have evaluated this question have concluded that Congress had the power to enact the Hate Crimes Act.

As the Fourth Circuit has explained, "Congress paid close attention to the scope of its authority under the Commerce Clause when it enacted the Hate Crimes Act, which was designed to strengthen federal efforts to combat violent hate crimes—crimes targeting victims based on certain enumerated characteristics." *United States* v. *Hill*, 927 F.3d 188, 196 (4th Cir. 2019). Congress did so "to ensure that hate crimes prosecutions brought under [§249(a)(2) would] not be mired in constitutional litigation." *Id*. (quoting H.R. Rep. No. 111-86, at 15 (2009)). Congress expressly referenced *United States* v. *Lopez*, and noted that "[t]o avoid constitutional concerns arising from the decision . . ., the bill requires that the Government prove beyond a reasonable doubt, as an element of the offense, a nexus to interstate commerce in every prosecution brought under one of the newly created categories of 18 U.S.C. [§] 249(a)(2)." *Id*. at 197 (quoting H.R. Rep. No. 111-86, at 15 (2009)). "Without question, the Hate Crimes Act reflects Congress's carefully considered judgment that the scope of the statute complies with Congress's authority under the Commerce Clause, as that authority has been understood by the Supreme Court." *Id*.

Other courts that have evaluated facial challenges to the Hate Crimes Act under the Commerce Clause have reached the same conclusion. *See United States* v. *Mason*, 993 F. Supp. 2d 1308, 1317 (D. Or. 2014); *United States* v. *Gardner*, 993 F. Supp. 2d 1294, 1304-05 (D. Or. 2014); *United States* v. *Jenkins*, 909 F. Supp. 2d 758, 770-71 (E.D. Ky. 2012); *United States* v. *Mullet*, 868 F. Supp. 2d 618, 622-23 (N.D.O.H. 2012) ("The statute requires the Government to allege and prove beyond a reasonable doubt a jurisdictional nexus, establishing an explicit connection between the prohibited conduct and interstate commerce.").

"Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has

3

Case: 1:21-cr-00085-SJD Doc #: 40 Filed: 11/17/21 Page: 4 of 9 PAGEID #: 213

exceeded its constitutional bounds." *United States* v. *Morrison*, 529 U.S. 598, 607 (2000). No such showing has been made by this defendant and thus his facial challenge to the Hate Crimes Act should be denied.

## II. The Hate Crimes Act is Appropriately Applied to the Defendant's Conduct.

The Hate Crimes Act is not only constitutional on its face, but also as applied to the defendant's crime. The indictment details numerous examples of the defendant's use of instrumentalities and channels of interstate commerce to commit his attempted hate crime. For example, the defendant used his computer to post online on Incel forums and research gun modifications, university police scanner codes, and his criminal culpability (e.g., "When does preparing for a crime become an attempt?"). The internet is a channel of interstate commerce. *United States* v. *Person*, 714 F. App'x 547, 551 (6th Cir. 2017). And using the internet to research targets and explain motivation provides the necessary nexus to interstate commerce. *See United States* v. *Roof*, 225 F. Supp. 3d 438, 455-56 (D.S.C. 2016) (defendant's use of the internet to identify the church he targeted and to "explain[] his motives via a manifesto on a website" provided an interstate nexus "sufficient to survive a motion to dismiss").

The defendant conducted surveillance, and kept notes of his observations on his cellular phone. A cellular phone is an instrumentality of interstate commerce. *United States* v. *Watson*, 852 F. App'x 164, 168 (6th Cir. 2021) ("our caselaw unequivocally holds that cellular telephones, even in the absence of evidence that they were used to make interstate calls, are instrumentalities of interstate commerce" (internal quotation marks and brackets omitted)); *United States* v. *Weathers*, 169 F.3d 336, 341 (6th Cir. 1999).

In addition to driving to the school he surveilled, he loaded his modified rifle, ammunition, and body armor into his car, clearly planning to drive to his intended location and conduct his mass attack. "[C]ars are themselves instrumentalities of commerce, which Congress may protect." *United States* v. *McHenry*, 97 F.3d 125, 126 (6th Cir. 1996); *see, e.g., Jenkins*,

4

909 F. Supp. 2d at 771 (though car used in a hate crime never crossed state lines during commission of the crime, "precedent in this Circuit is clear that when Congress limits a law to cover activity effectuated with a motor vehicle, it is inherently acting within its power to regulate the instrumentalities of interstate commerce").

At least one of his firearms travelled in interstate commerce.  It is well within Congress's power to regulate firearms that have moved at any time in interstate commerce.  *United States* v. *Chesney*, 86 F.3d 564, 570-72 (6th Cir. 1996).

The defendant resists the use of his firearms for interstate commerce nexus, arguing that, because at least one of the firearms was acquired before his postings on Incel forums, the firearms cannot form the basis of Commerce Clause jurisdiction.  Even assuming he is correct on the facts, he points to no authority that mandates that conclusion.  The timing of the acquisition of a deadly weapon—whether before the defendant's hateful motivation was developed or after—is irrelevant as to whether that weapon moved in interstate commerce.  In *United States* v. *Mullet*, for example, the weapons of the hate crime assault were scissors and hair clippers that moved in interstate commerce.  868 F. Supp. 2d 618, 623 (N.D.O.H. 2012).  The Government was not required to prove that the scissors and hair clippers moved in interstate commerce before the defendants formed the intent to attack their victims.  To attach this burden, there must be a clear directive in the statute or Commerce Clause caselaw.  The defendant points to no authority at all.

The Sixth Circuit has rejected a similar argument with respect to firearms in *United States* v. *Napier*.  233 F.3d 394 (6th Cir. 2000).  Defendant Napier was federally prosecuted for possessing a firearm while subject to a domestic violence order.  *Id*. at 396.  Napier argued that his prosecution exceeded Congress's power under the Commerce Clause because he had possessed his firearm for years before the entry of the domestic violence order against him.  *Id*. at 400.  Napier claimed, as the defendant does here, that his conduct and the effect on commerce

was too attenuated to support Commerce Clause jurisdiction. *Id*. at 400. In Napier's view, Congress could not regulate people who already owned a gun before they were subject to a domestic violence order. *Id*. The Sixth Circuit rejected this, noting "[w]ithout question, Congress has the power to regulate the interstate trade in firearms. . . . So long as that gun has moved across state lines at least once, it is subject to the exercise of congressional Commerce Clause authority." *Id*. at 401 (quoting *Gillespie* v. *City of Indianapolis*, 185 F.3d 693, 706 (7th Cir. 1999) *abrogated on other grounds by District of Columbia* v. *Heller*, 554 U.S. 570 (2008)).

Congress enjoys broad power under the Commerce Clause, and may properly regulate and protect the instrumentalities of interstate commerce, "even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558. Specifically, with the Hate Crimes Act, "Congress has made clear that it considers hate crimes . . . to have a substantial affect on interstate commerce, even if that affect may appear relatively minimal in an isolated case." *United States* v. *Beckham*, No. 3:18-cr-00075-1, 2019 WL 2869189, at *7 (M.D. Tenn. July 3, 2019). Because the defendant's crime used instrumentalities of interstate commerce, the federal jurisdictional requirement is met and the Hate Crimes Act is constitutional as applied to his conduct.[1]

---

[1] The defendant quotes heavily from a Sixth Circuit case upholding an as-applied challenge to the federal arson statute. In *United States* v. *Doggart*, the Court concluded that a mosque was not used in interstate commerce, and therefore the defendant's plot to burn one down could not be reached by the federal arson statute. 947 F.3d 879, 886-87 (6th Cir. 2020). In doing so, however, the Court noted that the defendant's conviction for solicitation to destroy religious property could not be similarly challenged. *Id*. at 887. That was because the destruction of religious property statute required only that the offense was in or affecting interstate or foreign commerce, and because the defendant "planned to use instrumentalities of interstate commerce to make the attack," the statute was constitutional as applied. *Id*.

### III.    The Defendant's Argument Misapprehends the Law.

Within the defendant's motion, he asserts a number of tangential points that bear no weight on the challenge he is raising.  They reveal a fundamental misapprehension of the law of attempt that needs to be addressed.

The defendant refers repeatedly to "pre-offense" actions and conduct.  As explained in the Government's opposition to the defendant's previous dismissal motion, the crime of attempt has two elements: (1) the defendant has intent to commit a crime, and (2) the defendant committed an overt act that constitutes a substantial step toward commission of the crime. *United States* v. *Wesley*, 417 F.3d 612, 618 (6th Cir. 2005).  The actions the defendant seeks to minimize are at minimum evidence of intent, which is a necessary part of the offense.  These actions are not "pre-offense" – they are part of the offense.  In an effort to shoehorn First Amendment rhetoric into his Commerce Clause challenge, the defendant limits his "pre-offense" actions to "private writings and thoughts."  While his manifesto, "isolated" farewell letter, Incel postings, and mass killing to-do list were "writings," they are strong evidence of intent at the very least, along with ample other evidence that the defendant was taking steps towards murdering women.  But even if they were the Government's only evidence of intent, the defendant points to nothing that forbids evidence of intent from forming the basis of Commerce Clause jurisdiction.

The defendant also misrepresents the Hate Crimes Act, raising a federalism bogeyman that "[a]lmost every motivation for any offense could arguably be tied to something about the person's gender, orientation, race, color, or belief system."  Def. Mot. at 9.  The defendant's cynicism aside, sustaining a charge under the Hate Crimes Act requires more rigorous proof of motivation than an "arguable tie."  First, the statute requires the Attorney General of the United States to certify that a prosecution under the statute is "in the public interest and necessary to secure substantial justice."  18 U.S.C. § 249(b).  Second, under this Circuit's decision in *United*

*States* v. *Miller*, the Government must establish that the protected characteristic is the but-for cause of the attack in order to sustain a charge under the Hate Crimes Act.  *See United States* v. *Miller*, 767 F.3d 585, 592-93 (6th Cir. 2014).  The defendant's concern that somehow the Hate Crimes Act "renders all personal crimes offenses federal," Def. Mot. at 9, mischaracterizes the Act and what the Government must establish to bring forth these charges.  Independent of this misrepresentation of the standard the Government must meet under the Hate Crimes Act, the defendant does not explain how this concern invalidates the Commerce Clause jurisdiction properly applied in this case.

## CONCLUSION

The Hate Crimes Act is a proper exercise of Congress's Commerce Clause power, and the Act, as charged here, is constitutional.  For the reasons outlined, the defendant's second motion to dismiss Count One should be denied.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Megan Gaffney Painter*
Megan Gaffney Painter (NY 4849220)
Timothy S. Mangan (069287)
Assistant United States Attorneys
221 East Fourth Street
Suite 400
Cincinnati, OH 45202
(513) 684-3711

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Government's Response in Opposition to Defendant's Motion to Dismiss Count One Based on Commerce Clause* has been electronically served via the Court's CM/ECF system this 17th day of November, 2021, upon counsel of record.

*s/Megan Gaffney Painter*
Megan Gaffney Painter (NY 4849220)
Assistant United States Attorney