# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 1:21CR085 |
| TRES GENCO, | : | Judge Dlott |
| Defendant. | : | |

### REPLY TO GOVERNMENT'S POST HEARING BRIEF

Now comes the Defendant, TRES GENCO, by and through counsel, and hereby submits his reply to the government's post hearing brief in this matter as follows.

**I. Officers not authorized to read Mr. Genco's private papers in warrantless search.**

The government's arguments that officers were permitted to read private papers of Mr. Genco during a search for the handgun are lacking in merit. Each argument is addressed below.

**1. Government may not rely on private search doctrine.**

The private search doctrine derives from the Supreme Court's decision in United States v. Jacobsen, 466 U.S. 109 (1984). In Jacobsen, the government was permitted to inspect a federal express package that was opened and delivered to the FBI by the private carrier. Id. at 482.

In analyzing Jacobsen, the Sixth Circuit expressly declined to extend the private search doctrine to permit the search of a residence by police. In United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997), a hotel manager had viewed contents of a hotel room and conveyed what he saw to police. The police then entered the hotel room and viewed the contraband. Analogizing the hotel room to a person's home, the court declined to apply the private search doctrine.

Specifically, the court found: "[T]his court is unwilling to extend the holding in Jacobsen to cases involving private searches of residences." Id. at 699.

Thus, on this basis alone the private search doctrine is inapplicable to the present case. Detective Engle searched Mr. Genco's room and found the paper allegedly reported by Mr. Genco's mother. Based on Allen, the private search doctrine clearly does not apply in this context. Had the mother located the paper (without police intervention) and delivered it to the officers (without requiring a search of Mr. Genco's room by police), the government may debatably have been able to justify the officer reading the private papers.

The cases cited by the government at pages 4-5 of its brief actually illustrate this point. First, in United States v. Miller, 982 F.3d 412 (6th Cir. 2020), Google independently located images of child pornography and voluntary sent them to the FBI. The court, relying on the private search doctrine, held that the FBI's subsequent review of the images was proper because a private party who searches a physical space and "hands over" paper files to the government has not violated the Fourth Amendment. Id. at 417.

Similarly, in United States v. Clutter, 914 F.2d 775, 778 (6th Cir. 1990), officers retrieved two bags of marijuana from the defendant's home. The first bag was physically brought to the police by a resident of the home. The court held that this first bag was properly justified by the "seldom" applied private search doctrine because it was delivered on a "silver platter" by the private person. Id. at 778-79. The second bag, however, could not be justified by the private search doctrine because the police physically entered the defendant's bedroom to obtain the bag. Thus, the court declined to analyze the search of the second bag under the private search doctrine, but rather weighed its admissibility based on a consent search of the home. Id. at 777-78.

The above-cited case law demonstrates that the private search doctrine does not apply to the present case. Mr. Genco's mother did not deliver the documents at issue to the police as with the child pornography in Miller and the first bag of marijuana in Clutter. Rather, the police had to search Mr. Genco's room to find it. The government cites to no case where a court permitted police to conduct a search of a residence based on the private search doctrine. Rather, the doctrine clearly only applies where private parties conduct a private search and then deliver the evidence to the officers. Allen, 106 F.3d at 699. See also United States v. Lichtenberger, 786 F.3d 478, 483-84 (6th Cir. 2015)(finding private search doctrine applied where private party provided laptop to police and they did not have to search the defendant's room to find it). Accordingly, the private search doctrine is inapplicable.

**2. Mr. Genco's mother had no authority to consent to a search.**

The government principally relied on the Sixth Circuit's decision in Pratt v. United States, 214 Fed. Appx. 532 (6th Cir. 2007) to argue that Mr. Genco's mother had authority to consent to a search of Mr. Genco's room. This case actually cuts against the government's argument. Relying on Supreme Court precedent, the Pratt court held that several factors are relevant in determining whether common authority exists for a family member to provide consent to a search: "[1] whether the co-occupant owns the residence or is named on the lease; [2] if the individual contributed rent; and [3] whether the individual visited the residence when the co-occupant was not present." Id. at 535 (citing Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)). In Pratt, the government introduced testimony to establish that the mother owned the residence, her son [the defendant] did not pay rent, and the mother had a key and unfettered access to his room. Thus, the Sixth Circuit found that the mother had common authority over the defendant's property. Id.

3

In stark contrast, the facts of the present case contain none of these factors. Regarding the first two factors, the government introduced no evidence at the hearing to establish ownership of the residence, nor whether Mr. Genco or his mother paid any rent. As to the third factor, the evidence established only that Mr. Genco lived at the residence and that the room searched was his bedroom. There was absolutely no testimony about the mother's access to Mr. Genco's room or whether she had a key. Thus, based on the Pratt factors, there was simply nothing to base a determination that the mother had common authority over Mr. Genco's private bedroom.

In fact, the only piece of evidence relied on by the government was the fact that Mr. Genco's mother had cleaned his room months prior while he was in the military and had seen the piece of paper in question. (Gov. Brief at p. 6). This evidence was unpersuasive. There was no indication in the testimony as to whether the mother had Mr. Genco's permission to enter his room months prior or whether he even aware of the intrusion. Clearly, it was insufficient to satisfy the Pratt factors that the mother entered his room one time months prior without Mr. Genco's knowledge and saw this piece of paper. Rather, every indication in this case pointed to the fact that Mr. Genco's mother had no authority to be in his room. Just being the mother of an adult son is simply not enough.

The same was true as to the issue of apparent authority. There was absolutely nothing that occurred during the course of the incident that would make a reasonable police officer believe that Mr. Genco's mother had apparent authority to consent to a search of his room. When police arrived, Mr. Genco was locked in his bedroom. (Tr. p. 21). There was no evidence introduced that the mother had a key to the room or otherwise had access. Rather, police had been called because the mother and son were at odds with each other. (Tr. p. 5). Mr. Genco's mother reported to police that Mr. Genco had a handgun. She advised that when she asked him about the handgun,

4

he told her it was "none of her business." (Tr. p. 10). Moreover, when Mr. Genco told police that he did not have a handgun, his mother called him a liar in front of the officers. (Tr. p. 11).

There is nothing about this factual situation that would suggest to officers that the mother had any authority whatsoever over Mr. Genco's property. Notably, the officers never even asked the mother for consent to search Mr. Genco's room. Rather, they asked Mr. Genco if they could search his room for the handgun. Detective Engle (the government's sole witness) did not even affirmatively claim that she believed the mother had authority to consent to a search. Thus, under the facts of this case, the government did not meet its burden to establish authority or apparent authority. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)(government bears burden of proof for third party consent).

As a final note, even if the Court concluded that Mr. Genco's mother somehow had authority to consent to a search of Mr. Genco's room (which she clearly did not), that does not end the inquiry. The Sixth Circuit has held that the search of a container within a bedroom is a separate matter requiring an additional layer of authority. United States v. Waller, 426 F.3d 838, 845 (6th Cir. 2005)(finding no actual or apparent authority for search of container holding defendant's property). There was no evidence introduced in this case to establish whether the paper that Mr. Genco's mother saw months prior was in this tub or in another location in the room. Further, nothing is known as to what happened to the paper in the months following the occasion that the mother had viewed it. With no evidentiary support as to how it got into the tub, there is no basis to believe that the mother had authority to consent to a search of the tub for the paper. It is at least equally likely that Mr. Genco hid it in his tub of junk after the military believing that no one would ever see it. Without further evidence and given the government's burden of proof, the mother's alleged consent was invalid.

### 3. Plain view exception

The government took the unusual position that the plain view exception does not apply to the facts of the present case because the officers did not "seize" the papers in Mr. Genco's room, but merely read them and included their contents in a search warrant application. The plain view rule, however, is an exception to the warrant requirement that the **government may rely on** to excuse its failure to obtain a warrant. It is the government's **burden** to establish that the plain view exception is applicable. United States v. Oliver, 686 F.2d 356, 371 (6th Cir. 1982)(The absence of a warrant places the burden of proving an exception to the warrant requirement on the government); United States v. Jetters, 432 U.S. 48, 51 (1951).

It is a fine needle to thread to claim, as the government has, that there is a difference between seizing a piece of paper versus reading it and fully reciting its contents in a search warrant affidavit. But taking the government's brief at face value, the government has conceded that the plain view exception does not apply in this case. See Gov. Brf. at p. 8 ("Plain view doctrine is not implicated here."). Given that the plain view doctrine is a warrant exception that the government would need to rely on to justify its warrantless search of Mr. Genco's room and papers, it appears that the government is not pursuing this doctrine as a grounds to justify the unconstitutional search of Mr. Genco's papers. Accordingly, as conceded by the government, it should not be considered in assessing the constitutionality of the warrantless search.

### 4. The private papers were not within the scope of the consent

The government's brief generally claims in several sections essentially that police ought to be able to read documents while searching for a gun. The repetition of this theme, however, with no supporting case law for the premise, does not make it any more correct. The Sixth Circuit and Supreme Court have been abundantly clear on these points. "'When law enforcement officers rely

6

upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search.'" United States v. Henry, 429 F.3d 603, 616 (6th Cir. 2005) (quoting United States v. Garrido-Santana, 360 F.3d 565, 575 (6th Cir.), cert. denied, 542 U.S. 945 (2004)). "The scope of a search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991).

Moreover, the Sixth Circuit has unambiguously held that officers may not read papers when searching for other contraband. United States v. Garcia, 496 F.3d 495 (6th Cir. 2007)(officers may not search a document while looking for other contraband "if it must be read in order for its incriminating nature to be determined.")

These cases crystalize the rather obvious concept that reading papers is not within the scope of a consent search for a gun. No case the government has cited provides to the contrary. As such, the officers' actions in reading Mr. Genco's private papers, kept in the quiet secrecy of his room, was improper.

At the end of the day, it is worth remembering that the Fourth Amendment, first and foremost, protects against improper intrusions into a person's home: "The very core of this [Fourth Amendment] guarantee is the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Caniglia v. Strom, 141 S. Ct. 1596 (2021). "Freedom in one's own dwelling is the archetype of the privacy protection secured by the Fourth Amendment." Lange v. California, 141 S. Ct. 2011, 2018 (2021). Based on these significant concerns, courts should not lightly permit searches of individuals' homes without requiring compliance with the letter of the law. In the present case, understanding they needed Mr. Genco's consent to search his room for a gun, the officers properly asked him for such consent, which he granted. The officers should have adhered to this narrow consent. They should not, without a warrant, have

searched for things other than the gun and should certainly have not read Mr. Genco's private writings. As such, the reference to the private writings should be stricken from the affidavit.

**II. The search warrant was not supported by probable cause**

The government raised no new argument that was not sufficiently covered in Mr. Genco's post hearing brief, however, one nuanced issue deserves mention. The government continued to not-so-subtly infer in its brief that no threat need be communicated in order to violate Ohio's Terroristic Threats statute. To this point, the government wrote at page 10-11 of its brief: "Again, in making this argument, the defendant glosses over the legal realities of the statute (**no threat need be conveyed**) under which he was convicted in the state." (emphasis added). This is blatantly incorrect. The whole and entire point of the Ohio Terrorist Threats statute is that a threat was conveyed. The threat does not have to be conveyed to the victim, but it nonetheless must be conveyed.

The government is undoubtedly aware that officers had no evidence at the time the warrant was obtained that a threat had been conveyed to anyone. Rather than acknowledge this simple fact, the government continues to suggest in filings that no threat need be conveyed. The law on this point is quite clear, and is fully and adequately presented in Mr. Genco's post hearing brief. The government has cited no law to the contrary. As such, there was obviously no probable cause provided in the warrant that the Ohio Terrorist Threats statute had been violated and thus no probable cause to search the residence. Florida v. Harris, 568 U.S. 237, 243 (2013)(probable cause exists when the facts available would cause a reasonable police officer to believe that the defendant has committed a crime and evidence or contraband of that crime will be present); U.S. v. Tagg, 886 F.3d 579, 587 (6th Cir. 2018)(same).

8

For this same obvious reason, the warrant was not saved by good faith. This issue likewise was thoroughly argued in Mr. Genco's post hearing brief. However, worthy of note is that the government made much in its brief about the fact that officers consulted with a county prosecutor and got the warrant approved by a state judge. In every single case involving a search warrant analyzed under the Leon good faith exception, the case was presented to a judge for issuance of the warrant. Thus, the government's reliance on Highland County authorities' opinion about probable cause does not in any way distinguish this matter.

Based on the foregoing, and the arguments in Mr. Genco's post hearing brief, the evidence obtained from the execution of the search warrant should be suppressed.

### III. Conclusion

All other issues raised in the government's brief were adequately addressed in Mr. Genco's post hearing brief. Accordingly, Mr. Genco requests that the Court grant his motions currently pending before the Court.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

*s/ Richard Monahan*
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Megan Gaffney Painter, Assistant United States Attorney, via Electronic Case Filing, on this day of 24th day of November, 2021.

*s/ Richard Monahan*