UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 1:21CR085 |
| TRES GENCO, | : | Judge Dlott |
| Defendant. | : | |

## MOTION FOR RECONSIDERATION

Now comes the Defendant, TRES GENCO, by and through counsel, and hereby moves the Court to reconsider the Order entered February 7, 2022. (R. 47). Specifically, Mr. Genco requests that the Court reconsider its Ruling in Sections II. B. 2 & 3 of the Order. In these sections, the Court held that, even excising the illegally seized evidence, the search warrant was nonetheless supported by probable cause and good faith. The grounds for reconsideration of Sections II. B. 2 & 3 are contained in the attached memorandum in support.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

s/ Richard Monahan
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

**Memorandum in Support**

The Court ruled that the officers violated the Fourth Amendment in this case by unlawfully reading a private writing (Exhibit 4) of Mr. Genco without a proper basis. Nonetheless, the Court held that, even with Exhibit 4 excised, the subsequently obtained search warrant (Exhibit 1) was supported by probable cause. This conclusion was based primarily on the fact that Mr. Genco's mother reported to officers after the unlawful search that the "letter" (Exhibit 4) of Mr. Genco contained "a plan for [Mr. Genco] to harm a lot of people."

Mr. Genco submits that this post-search statement of his mother must also be suppressed and excised from the search warrant affidavit as the fruit of the poisonous tree from the unlawful search. With the statement of the mother stricken from the affidavit, the warrant was lacking in probable cause and must be invalidated.

**I. Argument**

In ascertaining whether probable cause supports a search warrant, the court may consider only the "four corners of the affidavit." United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) (citing Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 565 n. 8 (1971)); United States v. Ruffin, 979 F.3d 528, 531–32 (6th Cir. 2020); United States v. Abernathy, 843 F.3d 243, 249 (6th Cir. 2016). The determination of probable cause is based upon the totality of the circumstances conveyed in the warrant. Illinois v. Gates, 462 U.S. 213 (1983).

**A. The mother's statement must be excluded as the fruit of the poisonous tree**

**1. Facts**

Considering only the face of the search warrant (Exhibit 1), three important facts are relevant to the fruit of the poisonous tree analysis. First, the affidavit described at page 4 that the officers searched Mr. Genco's room, they located and read the letter (Exhibit 4), and that Mr.

2

Genco's mother was observing from the doorway at the time.  Second, the affidavit further described that, after this search was conducted, the following transpired:

> After what had been located all units stepped out of the residence and called Federal Bureau of Investigations. Affiant and Sgt. Seaman spoke with [Mr. Genco's mother] briefly about her situation.

Third, the search warrant provided that Mr. Genco's mother disclosed during this post-search interview that she believed the letter the officers read (Exhibit 4) contained "a plan for [Mr. Genco] to harm a lot of people." (Exhibit 1, p. 4).  The Court also found these identical facts in its Order. (R. 47, Order, pp. 17-18).

### 2. Legal analysis

Clearly, Mr. Genco's mother's statement regarding the letter was the fruit of the poisonous tree from the unlawful search.  The Supreme Court has long held that the Fourth Amendment's exclusionary rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search." Murray v. United States, 487 U.S. 533, 536–37 (1988).  In fact, the Sixth Circuit has directly prohibited the practice utilized by the officers in the present case.

In United States v. Leake, 95 F.3d 409, 417 (6th Cir. 1996), the government obtained evidence from the defendant's home in violation of the Fourth Amendment.  Subsequently, the officers interviewed a witness who provided information that was based upon the evidence obtained in the unlawful search.  The Sixth Circuit held that the information obtained from the witness had to be suppressed as the fruit of the poisonous tree, pursuant to Wong Sun v. United States, 371 U.S. 471, 488 (1963).

The same is true in the present case.  The officers unlawfully searched and read Mr. Genco's private letter with his mother watching from the doorway.  As such, the mother was

3

patently aware of the officers finding the letter and reading it. The officers then immediately interviewed the mother, and she disclosed the contents of the letter from having read it months prior. Without a doubt, this interview of the mother was the direct product of the unlawful search. Or, at a minimum, the interview was "an indirect result of the unlawful search," which is likewise prohibited by the Supreme Court's decision in Murray, 487 U.S. at 536–37.

To this end, the Sixth Circuit has developed three factors for courts to consider in determining whether to exclude evidence as the fruit of the poisonous tree: "(1) the temporal proximity between unconstitutional conduct and the discovery of the challenged evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." United States v. Elmore, 18 F.4th 193, 200 (6th Cir. 2021).

These factors easily demonstrate that suppression of the mother's statement is appropriate in this case. First, according to the affidavit, the interview of the mother occurred immediately after the illegal search. Second, there were no intervening circumstances at all between the unconstitutional search and the interview. And third, this Court has already found misconduct on the part of the officer involved:

> Thus, the conduct was sufficiently "deliberate" as opposed to an "isolated" incident in this instance to warrant excision from the Search Warrant. Further, when testifying about whether she read Exhibit 4, Detective Engle was not forthcoming about her actions. Ultimately, she admitted she did read the document—a conclusion that was obvious given the document was heavily cited in the subsequent Search Warrant. This too, suggested to the Court a level of culpability and awareness rendering the conduct deliberate. Exclusion is appropriate to discourage this type of misconduct.

(R. 47, Order, p. 15).

In sum, the mother's statement about the contents of Mr. Genco's letter were clearly the fruits of the unlawful search. They were temporally and factually connected and, based on the plain wording of the search warrant affidavit, flowed directly from the unlawful actions of the

4

officers in reading the private letter. Accordingly, the statement about the contents of the letter by the mother should be suppressed and excised from the warrant.

### B. With the mother's statement stricken, search warrant lacking in probable cause

With the mother's post-search statement stricken from the affidavit, the thin case for probable cause in the warrant completely falls apart. As the Court noted in its Order, the remaining facts allegedly supporting probable cause to believe that Mr. Genco committed the offense of Ohio's Making Terroristic Threats were as follows: (1) Mr. Genco had two firearms; (2) Mr. Genco was angry and had fought with his mother; and (3) Mr. Genco had travelled to Greece the preceding year. These facts would not suggest to any reasonable person that Mr. Genco had violated the Ohio Making Terroristic Threats statute. What is prominently missing from this remaining evidence is any hint that Mr. Genco made any "threat with purpose to . . . intimidate or coerce a civilian population," as required by O.R.C. § 2909.23(A)(1); Ohio v. Klingel, 88 N.E. 3d 455, 459 (9th App. Dist. 2017).

To be sure, there are a lot of angry guys in the world who own guns and fight with family members. While this conduct can be questionable, it certainly is not probable cause to believe that Mr. Genco communicated a threat to harm the civilian population. Nor does the fact that he travelled to Greece the preceding year without discussing it with his mother change that formula. As discussed at length in prior filings, the Making Terroristic Threats statute requires at least some evidence that a threat was made. Because any debatable evidence of such in this case was obtained through unconstitutional means, the lawful portion affidavit which remains is simply not supported by probable cause.

**C. The warrant is not saved by good faith**

For these same reasons, the search warrant cannot be saved by good faith. An affidavit may not be saved by good faith where it was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 922 (1984). As noted in prior filings, the Sixth Circuit has repeatedly found good faith lacking where a critical element of the charged offense is missing. United States v. Ward, 967 F.3d 550, 555-56 (6th Cir. 2020); United States v. Hython, 443 F. 3d 480, 483-85 (6th Cir. 2006).

To this point, no reasonable officer could believe that a warrant is supported by probable cause for **Making Terroristic Threats** where any reference to a **threat** has been stricken due to police misconduct. In this case, the only remaining information in the affidavit was that Mr. Genco was angry, owned guns, fought with his mother, and had travelled to Greece the preceding year without discussing with her. It would be a tremendous leap to explain how these facts could possibly suggest that Mr. Genco had threatened to harm a civilian population. Rather, these circumstances describe a very broad range of persons who have committed no offense at all, much less the crime of Making Terroristic Threats. No reasonable officer could reach this conclusion. Thus, the good faith exception is inapplicable.

As an additional consideration, the good faith exception should not be used to condone the type of police activity involved in this case. As the Court noted in its Order, the officer's conduct was troubling at multiple levels. The officer chose to read a private letter of Mr. Genco knowing that she had no authority to do so, which "suggested to the Court a level of culpability and awareness rendering the conduct deliberate." (R. 47, Order, p. 15). Then, when questioned about the reading of the letter during examination before this Court, the officer "was not forthcoming about her actions. Ultimately, she admitted she did read the document—a conclusion that was

6

obvious given the document was heavily cited in the subsequent Search Warrant." (Id.). Finally, the Court found the officer's purported explanation under oath about why she read the letter questionable: "The Court is not convinced by Detective Engle's testimony that reading the note may have helped her determine the location of a gun in Genco's bedroom." (Id. at 10).

As the Supreme Court has held, the very reason the exclusionary rule exists is to "deter deliberate, reckless, or grossly negligent conduct." Herring v. United States, 555 U.S. 135, 144 (2009). This Court has already found the officer's actions to be "misconduct" and "deliberate." Excusing the execution of the search warrant - obtained by this same officer - based on "good faith" flies in the face of the very purpose of the exclusionary rule. As such, the Fourth Amendment should be applied in full force and the evidence suppressed.

## II. Conclusion

Based on the foregoing, this Court should reconsider its Ruling as it pertains to Sections II. B. 2 & 3 of the Order. The post-search statements of Mr. Genco's mother outlined in the search warrant affidavit should be stricken. With these statements excised, the search warrant is lacking in probable cause and cannot be saved by good faith. Accordingly, all evidence seized as a result must be suppressed.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

_s/ Richard Monahan_
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was served upon Megan Gaffney Painter, Assistant United States Attorney, via Electronic Case Filing, on this day of 8th day of February, 2022.

                                    *s/ Richard Monahan*