UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 1:21CR085 |
| TRES GENCO, | : | Judge Dlott |
| Defendant. | : | |

**REPLY TO GOVERNMENT RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION**

The government's response to Mr. Genco's motion for reconsideration is flawed legally and factually. First, the government applied the wrong legal standard: The case law cited by the government references Rule 59(e) of the Federal Rules of Civil Procedure, which clearly is inapplicable to the present case. Next, the government argued that the search warrant affidavit does not say what it plainly says. Contrary to the government's assertion, the affidavit indisputably states that Mr. Genco's mother spoke to the officers about the note **after** the unlawful search. Finally, the government urged the Court to look beyond the four corners of the search warrant to try to find facts to support the government's position. Considering facts beyond the four corners of the search warrant is prohibited by well-established law. As such, Mr. Genco's motion for reconsideration should be granted. Each issue is addressed in turn below.

**1. Reconsideration is warranted when the proper legal standard is applied**

The government argued that the Court should apply the legal standard for reconsideration from Chapman-Sexton v. United States, 2:16-cr-141, 2022 WL 203511 at *1 (S.D.O.H. Jan. 24, 2022). Chapman-Sexton is inapposite, as it turned on the application of Federal Rule of Civil Procedure 59(e), which requires in a civil or habeas case "[a] motion to alter or amend a judgment

must be filed no later than 28 days after the entry of the judgment." Id.; Fed. R. Civ. P. 59(e). This standard is obviously inapplicable here, as this case is neither a habeas nor a civil matter.

Instead, this Court may revisit any non-final ruling during the course of a criminal case, such as an order on a motion to suppress, based on its inherent authority. The Sixth Circuit has elaborated: "In both civil and criminal cases, a trial court is empowered to revisit any of its previous non-final rulings in the light of a perceived error or misjudgment, new relevant information, or even its simple conclusion that it may have acted in ill-considered haste." United States v. Reid, 357 F.3d 574 (6th Cir. 2004). See also United States v. Joshua Kersey, 1:17CR0116-SJD, R. 35 (S.D.O.H. 2017)(granting reconsideration of motion to suppress).

To be clear, Mr. Genco is not requesting the Court to relitigate an issue it has already decided. The question of whether the mother's post-search statement to the police was the fruit of the poisonous tree was simply not previously addressed. As such, Mr. Genco requests that the Court exercise its long-established authority to revisit its non-final Order and correct the perceived error.

**2. The affidavit does in fact say what it says**

The government claimed that the affidavit does not say that the mother's statement about the note occurred **after** the unlawful search. (Gov. Rsp, p. 8). Rather, the government purports that the affidavit says the opposite: that the statement occurred **before** the search. This claim is completely without merit. The affidavit reads: "After what had been located all units stepped out of the residence and called Federal Bureau of Investigations. Affiant and Sgt. Seaman spoke with [Mr. Genco's mother] briefly about her situation." (Ex. 1).

No clever argument from counsel is needed to construe the plain clarity of these two sentences. The language is unambiguous: The detective did not speak to Mr. Genco's mother

2

until after the search. Any doubt (and there should be none) is eviscerated by the fact that the entirety of the affidavit was written by the detective with the events in chronological order from beginning to end. It strains credibility to argue that the detective – with no literary device to so indicate – chose to write this singular segment about the mother's statement out of chronological order.

Perhaps this case proves the famous lines from George Orwell's 1984: "War is peace. Freedom is slavery. Ignorance is strength." The government adds to this Orwellian list, "After is before."

**3. This Court should not look beyond the four corners of the search warrant**

Given the reality that the affidavit does in fact say what it says, the government argues in the alternative that the Court should look beyond the four corners of the warrant and consider evidence introduced at the hearing to try to support its averments. This creates a kind of strange reverse Franks claim, where the government argues against the veracity of what was written in its own agent's affidavit. This approach is wholly unsupported in the case law.

The law on the "four corners of a warrant" is long standing, well recited in prior filings in this case, and thus incorporated herein by reference. See, e.g. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). There are only two recognized exceptions to the "four corners" requirements, neither of which is applicable here. First, the Court may consider sworn testimony made contemporaneously to the judge or magistrate at the time of the issuance of the search warrant. United States v. Tran, 433 F.3d 472, 482 (6th Cir. 2006); United States v. Shields, 978 F.2d 943, 946 (6th Cir. 1992). There is no evidence in this case that the detective offered testimony to the state judge at the time of the issuance of the search warrant that contradicted what she

attested in the affidavit. And clearly the evidence offered by the government at a hearing before this Court, nineteen months after the warrant's issuance, cannot meet this requirement.

Second, a court may consider evidence beyond the four corners of the warrant where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. Franks v. Delaware, 438 U.S. 154, 155-56 (1978); United States v. Fowler, 535 F.3d 408, 415 (6th Cir. 2008). This law, however, applies to a defendant challenging the accuracy of the facts in the search warrant affidavit. The government has cited no legal authority for a "reverse Franks" argument where the government, as here, challenges the accuracy of the plain wording of its own agent's affidavit. Thus, the government cannot rely on Franks to support looking beyond the four corners of the warrant.

The only case cited by the government to support its contention that the Court may consider evidence beyond the four corners of the affidavit is United States v. Smith, 386 F.3d 753, 763 (6th Cir. 2004). This case has no applicability here. In Smith, the government obtained a search warrant for a defendant's residence. In executing the warrant, the officers violated the knock and announce rule which invalidated the execution of the warrant and search of the home. Id. at 762. Thereafter, the officers searched the defendant's vehicle and found cocaine. The defendant claimed that the search of the vehicle was the unlawful fruit of the no knock entry of his home. Id. The "four corners of the warrant" case law obviously was not at issue because the relevant facts to the fruit of the poisonous tree argument all occurred **after** the execution of the search warrant. Thus, neither party raised nor did the Sixth Circuit consider a "four corners" argument because it was obviously not relevant to incidents that occurred after issuance and execution of the warrant. Id. at 763.

In stark contrast, the issue in Mr. Genco's case relates to facts that occurred before the issuance of the search warrant (the statement of the mother about the note) and these very facts were contained in the sworn affidavit to the issuing state judge. Thus, there were no post-execution-of-the-search-warrant facts to resolve as in Smith; rather, the only factual issue in the present case is based squarely on the facts contained in the search warrant affidavit. This goes to the very heart and purpose of the "four corners of the warrant" rule. As the Supreme Court held in Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560 (1971), "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he [or she] sought the warrant but not disclosed to the issuing magistrate. A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." Id. at 565, n.8 (citing Aguilar v. Texas, 378 U.S. 108, 109 n. 1 (1964)).

With no governing exception in the case law, the "four corners of the warrant" rule clearly applies to the present case. As such, the Court should reconsider its ruling and suppress the mother's statements as the fruit of the poisonous tree of the unlawful search.

**4. The evidence from the hearing is not what government says it is**

Even if the Court were to consider evidence beyond the four corners of the affidavit (which it clearly should not), the evidence is not as the government paints it. Detective Engle told a number of different stories about the evidence in this case. As noted above, there were discrepancies in the detective's varied statements regarding when the mother spoke to the officers. Moreover, at the suppression hearing, the detective claimed that the mother actually pointed the note out to her in the tub before she read it. (Tr. p. 14). This alleged fact was in neither the sworn affidavit (Ex. 1) nor the report (Ex. 3), both of which were generated on or near the date of the incident. Further, the detective's claims about what the mother actually said were inconsistent. In

5

the detective's report she wrote that the mother said her son was going to "hurt someone," (Ex. 3, p. 3), but in court the detective claimed that the mother said her son's plan was for "killing multiple people in a large group." (Tr. 10). These statements are obviously quite varied as to meaning and would have significantly different impact in the context of probable cause for the search warrant for Making Terroristic Threats.

Combining these inconsistencies with the Court's expressed concerns about the detective's veracity, the evidence beyond the four corners of the warrant does not paint a credible version of the facts that supports the government's arguments. Even if the law supported some type of reverse <u>Franks</u> claim that the government could raise, the inconsistent evidence presented does not support a believable story beyond what was sworn in the affidavit. Accordingly, the Court should make findings based on the facts sworn in the affidavit, as required by law.

**5. The case law clearly requires suppression of the mother's statement**

Preliminarily, the government took the unusual position that the inevitable discovery and independent source doctrines do not apply to the facts of the present case because they are not the "right standard" for analysis. (R. 49, Gov. Rsp., p. 9, n.3). The inevitable discovery and independent source doctrines, however, are exceptions to the exclusionary rule that the **government may rely on** to excuse the Fourth Amendment violation. It is the government's **burden** to establish that the inevitable discovery and independent source doctrines are applicable. Given that these doctrines are exceptions to the exclusionary rule that the government would need to rely on to justify its use of the mother's statement in the search warrant, it appears that the government is not pursuing these doctrines as grounds to justify the Fourth Amendment violation. Accordingly, as conceded by the government, the doctrines should not be considered in assessing the constitutionality of the officers' actions.

The government chose in its response to instead stake its claim entirely upon the attenuation doctrine. In making this claim, the government focused its whole argument on the "degree of free will" exercised by the mother in talking to the police, also known as voluntariness. While voluntariness is one of many factors to be considered by the Court, it is certainly not dispositive, as suggested by the government. Nor it is even clear that the government has focused on the correct aspect of voluntariness.

The government bears the burden of proving that the taint of a prior Fourth Amendment violation has been attenuated. United States v. Bocharnikov, 966 F.3d 1000, 1003 (9th Cir. 2020). Where the government argues attenuation, it must do more than show that the statement was "voluntary" – it must also establish that "intervening events break the causal connection" between the Fourth Amendment violation and the statement. Oregon v. Elstad, 470 U.S. 298, 306 (1985). Thus, the voluntariness of the statement is "merely a threshold requirement"; in addition, "the prosecution must show a sufficient break in events" to remove the primary taint of the Fourth Amendment violation. Id. (citing Taylor v. Alabama, 457 U.S. 687, 690 1975)).

In making this assessment, the Sixth Circuit has required consideration of multitudinous factors. United States v. Akridge, 346 F.3d 618, 626 (6th Cir. 2003). The factors include:

(1) the free will or voluntariness of the witness;
(2) the role of the illegality in obtaining the testimony;
(3) the time elapsed between the Fourth Amendment violation and the witness' decision to cooperate;
(4) the purpose and flagrancy of the official misconduct;
(5) the presence of intervening circumstances;
(6) the time, place, and manner of initial questioning;
(7) whether the witness was a defendant;
(8) whether the illegally obtained evidence was used in questioning the witness;
(9) the time between the search and the initial contact with the witness;
(10) whether the investigators knew of the relationship between the witness and the defendant; and
(11) whether the unlawful search was made intending to find evidence implicating the defendant.

Id. at 626. The government cited this case in its response, but mentioned only one factor, which was related to voluntariness.

Weighing the factors in total, it quickly becomes clear that the government cannot show attenuation, as the taint from the unlawful search of Mr. Genco's private note was in no way dissipated before the interview of the mother. The mother observed from the doorway of her son's bedroom as Detective Engle found and unlawfully read Mr. Genco's private letter. According to the affidavit (Ex. 1), after the unlawful search, the officers stepped out of the house, some officer called the FBI, and Detective Engle and another officer briefly interviewed the mother. Thus, immediately after the mother watched Detective Engle improperly reading her son's private letter, the detective questioned her about it. As such, mere moments elapsed between the illegal conduct and the interview. No intervening circumstances appear in the affidavit at all, nor has the government argued any. The place of the interview was directly in front of the very residence where the improper police conduct occurred. Although it does not appear that the letter itself was shown to the mother during questioning, she had just seen it moments before when the detective unlawfully read it. And there is no dispute that the unlawful search was conducted for the purpose of finding incriminating evidence against Mr. Genco.

In short, not a single factor suggests that the interview of the mother was legally attenuated from the unlawful search such that a sufficient break in the chain of events occurred to remove the taint of the Fourth Amendment violation. While the government made much of the fact that the mother called the police and was upset with her son, none of this discounts the fact that she had just observed an unlawful search of his room prior to speaking with officers, and even by the detective's own report in the affidavit, she was reluctant to speak with officers about the letter.

8

As a final note, the purpose and flagrancy of the officer's conduct is a required factor for consideration. Admittedly, courts often give the benefit of the doubt to officers in conducting police work. Such should not, however, be afforded to the detective's conduct in this case; rather, this case illustrates the very reason for the existence of this factor. This Court has already found that the detective's conduct in engaging in an unlawful search was "deliberate." (R. 47, Order, p. 15). Further, the Court ruled that the detective's conduct in attempting to deny obvious facts from the case "suggested to the Court a level of culpability and awareness rending the conduct deliberate." (Id.). Finally, the Court held that exclusion of evidence was necessary in the case in order to deter the police "misconduct." (Id.). Under the circumstances, this factor weighs heavily in favor of exclusion.

As such, the government has clearly not satisfied its burden to prove legal attenuation of the mother's statement. Accordingly, the mother's statement to the police should be suppressed as the fruit of the poisonous tree from the unlawful search and it should be stricken from the affidavit.

### 6. Remaining issues

The remaining issues regarding the want of probable cause in the search warrant and the lack of good faith were sufficiently addressed in Mr. Genco's motion for reconsideration.

### 7. Conclusion

Based on the foregoing, Mr. Genco requests that this Court reconsider its ruling, suppress the statement of the mother as the fruit of the poisonous tree from the unlawful search, strike the mother's statement from the search warrant affidavit, and accordingly find that the search warrant was lacking in probable cause.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

*s/ Richard Monahan*
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Tres Genco

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Megan Gaffney Painter, Assistant United States Attorney, via Electronic Case Filing, on this day of 17th day of February, 2022.

*s/ Richard Monahan*