UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 1:21CR085 |
| TRES GENCO, | : | Judge Dlott |
| Defendant. | : | |

**SUPPLEMENTAL SENTENCING MEMORANDUM OF DEFENDANT TRES GENCO**

After the filing of the presentence investigation report (PSR) and the parties' sentencing memoranda, an updated psychological evaluation was submitted to the Court. This supplemental memorandum addresses the additional mitigating factors suggested by the report.

By way of brief background, Mr. Genco was psychologically evaluated by Dr. Joy McGhee when he was arrested on the parallel state charges back in 2020. The Court has been provided with a copy of this report. Dr. McGhee found that Mr. Genco was competent for purposes of the state court proceedings but that "he has a history of experiencing and currently exhibits symptoms of severe mental illness." Dr. McGhee described these symptoms as "depression and anxiety," but did not render a formal diagnosis.

The updated psychological testing was conducted by Dr. Robert Stinson, who provided the Court with a 25 page highly detailed report. In his report, Dr. Stinson built on the findings of Dr. McGhee and, based on his own testing and extensive examination of Mr. Genco and his history, concluded that Mr. Genco suffers from Bipolar I Disorder (Most Recent Episode Mixed with Psychotic Features) and Alcohol Use Disorder (Severe – In Remission in a Controlled Environment). These findings provide significant insight into Mr. Genco and his commission of

1

the present offense, and substantially support the sentence requested in Mr. Genco's sentencing memorandum, a sentence of time served.

Dr. Stinson reached two important conclusions about Mr. Genco. First, Dr. Stinson believed that Mr. Genco was "in the throes of a mixed mood episode with psychosis at the time of the offenses charged and, indeed, it appears that his acts charged were a product of his mental illness." (Stinson Report, p. 25). Dr. Stinson further concluded that "but for [Mr. Genco's] mental illness and the symptoms he was experiencing, he would not have engaged in the acts charged." (Id. at p. 23).

Second, Dr. Stinson found that, with proper treatment, Mr. Genco's "risk for future violence is low." (Id. at p. 23). In summarizing this point, Dr. Stinson provided:

> With ongoing mental health treatment and monitoring and with abstinence from alcohol and illicit drugs, Mr. Genco presents low risk for violence in the long term. That is, his acts charged and his risk for future violence is associated with his mental illness and his psychiatric stability. Mr. Genco has periods of stability with intermittent depressive, manic and mixed episodes. Bipolar I Disorder is a treatable condition and with ongoing treatment, monitoring, and stability, his risk for future acts of violence can be mitigated.

(Id. at p. 25).

Additionally, Dr. Stinson provided a long and detailed psychological and social history for Mr. Genco. The report confirmed and expanded on the information already provided to the Court both in the PSR, the original psychological report, and Mr. Genco's sentencing memorandum. The report detailed the difficult childhood that Mr. Genco endured with a mother who suffered from mental illness and pain pill addiction. (Id. at p. 4). It described the extreme social isolation brought about by his mother, including from members of their own family, and the negative treatment Mr. Genco received. (Id. at pp. 4-5). As a result, Mr. Genco scored seven out of ten factors suggesting a highly dysfunctional childhood experience. (Id. at 5-6).

Moreover, the report detailed Mr. Genco's mental health struggles, the numerous over-the-counter and prescription medications he tried to alleviate his symptoms, and his bout with alcohol during his trip to Greece (during which he scribbled much of the writings charged in this case). Without simply rehashing all of the findings in the report, suffice it to say that Dr. Stinson's conclusions squarely supported Mr. Genco's suggestion in his sentencing memorandum that a significant downward variance is warranted in this case.

At the time of the offense, it is clear that Mr. Genco was suffering from a serious mental illness. Dr. McGhee made this finding, and Dr. Stinson provided the specific diagnosis of Bipolar I Disorder. Dr. Stinson further concluded that Mr. Genco's mental illness contributed to his decision making process in committing the offense. Further, as can be gleaned from the report, the efforts at treatment that Mr. Genco had undertaken with St. John's Wart and Adderall were actually exacerbating the mania associated with his Bipolar Disorder.[1] Certainly untreated or improperly treated mental health issues are an encouraged factor under the sentencing guidelines in determining whether a sentence below the guideline range is appropriate. See U.S.S.G. § 5H1.3.

Additionally, as noted above, Dr. Stinson found that Mr. Genco's Bipolar Disorder and Alcohol Use Disorder are definitely treatable. Further, Dr. Stinson emphasized that, with proper treatment, Mr. Genco has a low risk of reoffending. These are key considerations in the approval of a substantial downward variance in this case.

To this point, Mr. Genco is already well down the path of rehabilitation. As explained extensively in Mr. Genco's sentencing memorandum, he was previously fully prosecuted for the exact same criminal conduct in state court, served a 17 month sentence, and was rehabilitating

---

[1] In fact, in the midst of his psychological problems in January 2020, Mr. Genco conducted internet searches trying to figure out whether the medication was making his problems with mania worse. A short table of the searches he conducted is attached as Exhibit 1.

through the halfway house programming. Further, he was working successfully in the community in multiple jobs. And prior to his rearrest on the duplicitous federal charges, he had enrolled in Columbus State Community College, had financial aid set up, and was ready to begin. It was clear that he was on the right track with no indicia that he still fostered the beliefs that led to his prosecution.

Moreover, as explained in detail in Mr. Genco's sentencing memorandum, even in his darkest moments in the throngs of his mental illness, Mr. Genco was expressing reservations about the Incel belief system and its violent tendencies. This is important because it demonstrated that even at his worst, Mr. Genco had understanding that he was on a very bad track and needed to pull himself out. These facts strongly support the notion that Mr. Genco will continue to rehabilitate himself, he will obtain effective treatment of his underlying conditions, and he will be a low risk of reoffending in the future.

These considerations speak directly to the core concerns articulated in the factors under 18 U.S.C. § 3553, namely protecting the public from future crime and deterring criminal conduct. The likelihood of recidivism is at the heart of Congress' sentencing factors, and Dr. Stinson's report speaks directly to these concerns.

In conclusion, based on the supplemental findings by Dr. Stinson, and Mr. Genco's history and his post-offense rehabilitation, a sentence of time served is warranted in this case.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

*s/ Richard Monahan*
Richard Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 268-2453

Attorney for Defendant
Tres Genco

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Megan Gaffney-Painter, Assistant United States Attorney, via Electronic Case Filing, on this 3rd day of November, 2023.

*s/ Richard Monahan*
Richard Monahan

5