IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | : |
| | : Case No. 1:21-cr-85 |
| Plaintiff, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : Order Overruling Sentencing Objection |
| Tres Genco, | : |
| | : |
| Defendant. | : |

This matter is before the Court on Defendant Tres Genco's objection to the Presentence Report ("PSR"), which the Probation Officer set forth in the Addendum to the PSR. (*See* Doc. 65 at PageID 486–492.) Genco and the Government each filed Sentencing Memoranda and Supplemental Sentencing Memoranda. (Docs. 67, 68, 70, 71.)

**I.   Background**

On July 20, 2021, Defendant Tres Genco was indicted on the following charges: (1) attempted hate crime in violation of 18 U.S.C. § 249(a)(2); and (2) unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (Doc. 7.)  On October 11, 2022, Genco pled guilty to Count 1 of the Indictment, attempted hate crime, in violation of 18 U.S.C. § 249(a)(2). (Doc. 60 at PageID 438; Doc. 61.) Both parties filed Sentencing Memoranda in advance of Genco's Sentencing Hearing. (Docs. 67, 68, 70, 71.) Genco objects to the calculation of his base offense level as set forth in the PSR. For the reasons that follow, his objection is **OVERRULED.**

Pursuant to the Statement of Facts to which he admitted, from on or about January of 2019 through on or about March 12, 2020, Genco "plotted and attempted to willfully cause bodily injury to women because of their actual or perceived gender." (Doc. 60 at PageID 443.)

He admitted that "[t]he conduct included an attempt to kill women through the use of a firearm and a dangerous weapon." (*Id.*) During the relevant period, Genco "considered himself a member of the Incel movement[,]" which is a shortened form of "involuntary celibate," and "is an online community of predominantly men who harbor anger towards women, fueled by their inability to convince women to engage in sexual activity with them." (*Id.*) Genco maintained profiles on an Incel website and posted hundreds of times. (*Id.*) Genco admitted he "formulated a plot to kill women and intended to carry it out." (*Id.*) He admits that "[i]n furtherance of this plot, G[enco] possessed a Palmetto State Armory 5.56x45mm caliber firearm, to which he attached a bump stock, and a Glock-style Luger caliber semiautomatic pistol with the rear rails removed." (*Id.*)

The PSR includes additional details about Genco's plot to kill women. From July 2019 to March 12, 2020, Genco considered himself a member of the Incel movement. (Doc. 65 at PageID 474.) He identified with an Incel leader named Elliott Rodger, or "ER," who killed six people and injured fourteen others on May 23, 2014. (*Id.*) Prior to the attacks, ER "shot" a group of college students with orange juice from a water gun. (*Id.*) On August 6, 2019, Genco posted the following on an Incel website:

> I put some orange juice in a water gun, I was planning to spray some foids and couples like ER did, when I finally did do it, it was ER's birthday and I didn't even know that. Felt like I spiritually connected to the saint on that day . . . I drove up to them saying hi and they didn't even look up, they just went 'uhuh' so they get sprayed in the f[. . .] face. I suggest it to all incels, extremely empowering action.

(*Id*) (expletive removed). In January 2019, Genco purchased tactical gloves, a bullet proof vest, a hoodie with the word "revenge" written on it, cargo pants, a bowie knife, and a skull face mask. (*Id.*) He purchased a rifle in February 2019. (*Id.*) On Mary 20, 2019, he purchased two

2

factory Glock 17 magazines, a 9 mm Glock 17 clip, and a concealed carry holster clip for a Glock firearm. (*Id.*)

Between July 30, 2019 and August 15, 2019, Genco wrote a note that referenced an Ohio college. (*Id.*) The note included the following information: "May 23, 2020 290 days; M16 optional, covert or mil-spec. Will get arms training in BCT, Georgia KC needs to be huge! 3,000? Aim big then." (*Id.*) Law enforcement understood "KC" to mean "kill count."

On August 3, 2019, Genco wrote a document entitled "A Hideous Symphony a manifesto written by Tres Genco, the socially exiled Incel." (*Id.*) The note discusses obtaining United States army training and includes the statement: "this training will be for the attainment of one reality, the death of what I have been deprived most, but also cherish and fantasize at the opportunity of having but has been neglected of: Women. I will slaughter out of hatred, jealousy, and revenge…" (*Id.*)

On August 3, 2019, Genco conducted online searches for sororities and a university in Ohio. (*Id.* at PageID 475.) He researched gun modifications that same month and saved illustrated guides for the construction of M-16s. (*Id.*) He searched the Internet for topics including "Elliot Rodger," "difference between full auto and semi auto," "homemade flash bang," and "how many days until may 23." (*Id.*) He enlisted in the United States Army and began basic training on August 20, 2019 and was discharged for entry-level performance and conduct on December 18, 2019. (*Id.*)

On January 11, 2020, after returning to Ohio, Genco created a document entitled "isolated," which includes the following statements: "If you're reading this, I've done something horrible. Somehow you've come across the writings of the deluded and homicidal, not an easy

3

task, and for that I congratulate you for your curiosity and willingness to delve into such a dark topic." (*Id.*) He signed the note, "Your hopeful friend and murderer." (*Id.*)

Around January 15, 2020, Genco conducted internet searches for topics that included "planning a shooting crime" and "When does preparing for a crime become an attempt?" (*Id.*) On March 11, 2020, Mr. Genco conducted an Internet search of police scanner codes for Columbus, Ohio and university police agencies. (*Id.*)

Genco was arrested on March 12, 2020. (*Id.* at PageID 472.) He was taken into custody and consented to a search of his vehicle, and agents located the following items in the trunk of his car: an AR-15 style rifle with a suspected bump stock attached; several loaded magazines; body armor; and boxes of ammunition. (*Id.* at PageID 473.) Officers also located a handgun in the heating vent of Genco's bedroom. (*Id.*)

## II.  Law and Analysis

United States Sentencing Guidelines are advisory and are used to assist the Court in exercising its discretion in determining an appropriate sentence. *United States v. Gates*, 48 F.4th 463, 471 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (2023) quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018)) ("Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as 'a meaningful benchmark.'") The United States Sentencing Guideline for a violation of 18 U.S.C. §§ 249(a)(2) and (a)(2)(A)(ii) is U.S.S.G. § 2H1.1. Pursuant to U.S.S.G. § 2H1.1(a)(1), to determine the base offense level, the court is to "Apply the Greatest" of:

> (1) the offense level from the offense guideline applicable to any underlying offense;
> (2) 12, if the offense involved two or more participants;
> (3) 10, if the offense involved (A) the use or threat of force against a person; or
> (B) property damage or the threat of property damage; or
> (4) 6, otherwise.

4

U.S.S.G. § 2H1.1(a)(1)–(4). According to Application Note 1 of U.S.S.G. § 2H1.1, "'[o]ffense guideline applicable to any underlying offense' means the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law (other than an offense that is itself covered under Chapter Two, Part H, Subpart 1)." U.S.S.G. § 2H1.1 n.1. Here, Genco's offense of conviction is attempted hate crime. Because Genco admitted in the Statement of Facts that his conduct included an attempt to kill women and he intended to carry out his plot to kill, the Court applies the "underlying offense" of attempted murder. U.S.S.G. § 2A2.1, "Assault with Intent to Commit Murder; Attempted Murder," instructs that the base offense level is 33 if the object of the offense would have constituted first degree murder. U.S.S.G. § 2A2.1(a)(1). "First degree murder" is "conduct that if committed "would constitute first degree murder under 18 U.S.C. § 1111." U.S.S.G. § 2A2.1 n.1. 18 U.S.C. § 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought." "[P]remeditated killing . . . is murder in the first degree." *Id.* "To apply the attempted-murder cross-reference, a district court must therefore find 'by a preponderance of the evidence' that the defendant 'possessed the specific intent to kill.'" *United States v. Miller*, 73 F. 4th 427, 430 (citing *United States v. Howell*, 17 F. 4th 673, 689–690 (6th Cir. 2021)).

Genco objects to the Court applying a cross-reference to U.S.S.G. § 2A2.1 in paragraphs 43–45 of the PSR. He argues that his base offense level is 10. According to Genco, U.S.S.G. § 2H1.1(a)(3) applies because the offense of attempted hate crime "involved the use or threat of force against a person." He contends the cross-reference provision at U.S.S.G. § 2H1.1(a)(1) does not apply here, because it applies only to conduct "other than an offense that is itself covered" by U.S.S.G. § 2H1.1. He argues that he did not plead guilty to assault, nor are there facts to support that he actually assaulted female victims.

5

The Government supports the cross-reference. The Government argues that Genco admitted in the Statement of Facts to his Plea Agreement that his conduct included an attempt to kill women. Because the Guidelines instruct the Court to apply the greatest of the subsections, his conduct fits squarely within that of attempted murder, resulting in a higher base offense level. The Court agrees.

Application Note 1 to U.S.S.G. § 2H1.1 accounts for the fact that conduct constituting an attempted hate crime may constitute other, greater offenses. As the Government points out, in *United States v. Cozzi*, the Seventh Circuit Court of Appeals calculated the base offense level for a hate crime under 18 U.S.C. § 249 by applying the sentencing guideline to the underlying offense of aggravated assault because it produced a greater base offense level than U.S.S.G. § 2H1.1. 613 F.3d 725, 734 (7th Cir. 2010). The Seventh Circuit Court of Appeals described § 2H1.1 as a "floor, not a ceiling." *Id.* (quoting *United States v. Byrne*, 435 F.3d 16, 27 (1st Cir. 2006)). The Court found that the Guidelines recognize situations where a defendant's conduct is more reprehensible than a civil rights violation, and that conduct should be treated on par with sentencings of defendants in federal court who committed similar conduct. *Id.* The Court finds this interpretation to be intuitive and to apply here as well.

Under the Statement of Facts listed in the Plea Agreement, Genco admitted that from on or about January 2019 through March 12, 2020, he "plotted and attempted to willfully cause bodily injury to women because of their actual or perceived gender. The conduct included an attempt to kill women through the use of a firearm and a dangerous weapon." (Doc. 60 at PageID 443.) These facts and admissions establish the elements of 18 U.S.C. § 249: the defendant (1) willfully caused or attempted to cause; (2) bodily injury to any person; (3) because of their actual or perceived gender.

6

The admissions in the Statements of Fact also establish the "underlying offense" of attempted murder by a preponderance of the evidence. Genco admitted in the Statement of Facts that his conduct included "an attempt to kill women through the use of a firearm and a dangerous weapon" and that he "formulated a plot to kill women and intended to carry it out." (Doc. 60 at PageID 443.)

Although his admissions are enough, the Court also notes that Genco took many steps demonstrating he intended to follow through with his intent to kill as set forth in the PSR. He wrote a note signed "Your hopeful friend and murderer." (Doc. 65 at PageID 474.) This note suggests that Genco was likely to go through with his horrible plot to murder. When he was arrested on March 12, 2020, Genco's trunk contained body armor, an AR-15 style rifle with a bump stock, loaded magazines, body armor, and boxes of ammunition. Officers also located a handgun in his bedroom. (*Id*. at PageID 473.) In short, he had acquired and prepared the means to complete his plot, and having weapons and ammunition in his vehicle suggest to the Court that he was getting ready to act.

The Court finds that Genco's admissions establish that he committed the underlying conduct of attempted murder such that the higher base offense level, 33, should apply. His conduct is more reprehensible than an attempted hate crime. Genco's objection is overruled.

III. **Conclusion**

Genco's objection is **OVERRULED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court